23 A.3d 966

COMMONWEALTH of Pennsylvania, Appellee

v.

PENNSYLVANIA STATE TROOPERS
ASSOCIATION, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 20, 2010.

Decided April 28, 2011.

58

Sean Thomas Welby, Gary M. Lightman, Lightman Welby Stoltenberg & Caputo, Harrisburg, for Pennsylvania State Troopers Association.

Patricia Joan Goldband, Lisa K. Essman, Frank A. Fisher, PA Office of Administration, Harrisburg, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION ANNOUNCING THE JUDGMENT
## OF THE COURT

Justice McCAFFERY.

Appellant, the Pennsylvania State Troopers Association, appeals from that portion of the opinion and order of the Commonwealth Court invalidating a provision of an Act 111 [1] interest arbitration award concerning the pay Pennsylvania State Troopers are to receive while on "union leave." Concluding that the Commonwealth Court erred in its determination that this provision violates statutory law, we reverse the Commonwealth Court.

Appellant and Appellee, the Commonwealth of Pennsylvania ("Commonwealth"), were parties to a collective bargaining agreement ("CBA") pertaining to the working conditions of Appellant's members, which expired on June 30, 2008. When Appellant and the Commonwealth reached an impasse in their negotiations for a successor CBA, Appellant requested the appointment of a board of arbitration pursuant to Section 4(a) of Act 111, 43 P.S. § 217.4(a). [2] After a hearing, the Act 111 interest arbitration panel selected to resolve the impasse entered an award concerning several issues. With respect to the issue of union leave, Article 30 of the award contained the following language:

Upon written request by [Appellant], Union officers shall be released from duty. Union officers released from duty pursuant to State law shall be paid by the Commonwealth at the amount designated by [Appellant's] Board of Directors,

1. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10. Act 111 expressly gives police and fire fighters the right of collective bargaining concerning working conditions and the swift and final resolution of disputes by non-appealable arbitration.

2. Section 4(a) relevantly provides:

If in any case of a dispute between a public employer and its policemen or firemen employes[,] the collective bargaining process reaches an impasse and stalemate ... with the result that said employers and employes are unable to effect a settlement, then either party to the dispute, after written notice to the other party containing specifications of the issue or issues in dispute, may request the appointment of a board of arbitration.

43 P.S. § 217.4(a).

not to exceed the rate of the highest ranking member of the bargaining unit with appropriate longevity. Any amount paid by the Commonwealth, including the cost of all benefits, shall be reimbursed by [Appellant] to the Commonwealth in accordance with law.

Petition for Review of an Act 111 Interest Arbitration Award, filed by the Commonwealth in the Commonwealth Court on January 22, 2009, at 2.[3]

The Commonwealth petitioned the Commonwealth Court to review this and one other provision of the interest arbitration award pursuant to Section 763(b) of the Judicial Code, 42 Pa.C.S. § 763(b).[4] Thereafter, a divided panel of the Commonwealth Court vacated the union leave provision of the award. *Commonwealth v. Pennsylvania State Troopers Ass'n*, 979 A.2d 442, 447 (Pa.Cmwlth.2009).[5]

In coming to its determination, the Commonwealth Court first addressed its relevant scope of review. Act 111 explicitly prohibits **any** appeal of Act 111 arbitration awards. 43 P.S. § 217.7. However, we have long held that limited judicial review of Act 111 arbitration awards is permitted under the confines of the narrow *certiorari* scope of review. *See Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n ("Betancourt")*, 540 Pa. 66, 656 A.2d 83, 89–90 (1995). "[T]he narrow *certiorari* scope of review limits courts to reviewing questions concerning: (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess in exercise of the arbitrator's powers; and (4) deprivation of constitutional rights." *Id.* Thus, the initial question for any court asked to review an Act 111 arbitration award is

3. The relevant interest arbitration award, dated December 24, 2008, is not contained in the official record. However, there is no articulated dispute between the parties regarding the accuracy of the language of Article 30 of the award.

4. Section 763(b) relevantly provides that "The Commonwealth Court shall have exclusive jurisdiction of all petitions for review of an award of arbitrators appointed in conformity with statute to arbitrate a dispute between the Commonwealth and an employee of the Commonwealth." 42 Pa.C.S. § 763(b).

5. The court affirmed the provision not at issue before us.

whether the issue or issues raised on appeal fall or falls under any of the four prongs of such circumscribed scope of review.

In this case, the Commonwealth Court concluded that the third prong of narrow *certiorari*, namely, the limits of the power or authority of the Act 111 arbitration panel, was implicated. An arbitration panel exceeds the limits of its powers when its award orders an "illegal act." *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, 595 Pa. 47, 938 A.2d 225, 230 (2007). The Commonwealth argued below, as it does here, that the union leave provision of the award violated Section 5302(b)(2) of the State Employees' Retirement Code ("SERC"), 71 Pa.C.S. § 5302(b)(2), and, in so doing, required the Commonwealth to perform an illegal act.

Section 5302 determines what constitutes "credited state service" for computing retirement benefits for state employees. 71 Pa.C.S. § 5302. Section 5302(b)(2), the section at issue here, concerns "creditable leaves of absence," and gives service credit to state employees on paid leave for service as officers of collective bargaining organizations under Act 111 or other public employee laws. Section 5302(b)(2), however, contains a series of provisos that limit in some manner the creditable leaves of absence recognized by this section. Relevantly, Section 5302(b)(2) states:

> Provided, ... that **the employer shall fully compensate the member,** including, but not limited to, salary, wages, pension and retirement contributions and benefits, other benefits and seniority, **as if he were in full-time active service;** and that the Statewide employee organization shall fully reimburse the employer for all expenses and costs of such paid leave....

71 Pa.C.S. § 5302(b)(2) (emphasis added).

The Commonwealth Court agreed with the Commonwealth's argument that Section 5302(b)(2) obligated the Commonwealth to pay a trooper on union leave only the compensation that the trooper would receive "as if he were in full-time active service." Thus, because the union leave provision directed the

Commonwealth to pay an amount of compensation likely to be higher than the active-service salary of the trooper on union leave, the court determined that the award would force the Commonwealth to violate a statutory requirement.

The Commonwealth Court wholly based its conclusion on its holding and analysis in *Kirsch v. Public School Employees' Retirement Board,* 929 A.2d 663 (Pa.Cmwlth.2007) (*"Kirsch I "*), *aff'd,* 603 Pa. 439, 985 A.2d 671 (2009) (*"Kirsch II "*).[6] In *Kirsch I,* school employees on union leave received greater compensation than they would have received had they remained in their positions in the school district. For purposes of the employees' retirement benefits, the school district had traditionally reported to the Public School Employees Retirement System ("PSERS") only the compensation the union-leave employees would have earned had they remained in their pre-union-leave positions in the school district. However, a CBA was entered into by the school district and the union that required the school district to report to PSERS the actual, higher wages received by union-leave employees, not the wages they would have received had they simply remained in their school district jobs. When the union-leave employees retired, they sought pensions based on their union salaries. PSERS opposed what it deemed to be a quest for inflated pension benefits.

The union-leave employees filed grievances with the Public School Employees' Retirement Board ("Board"), but did not prevail. The Board's decision was based on language in Section 8102 of the Public School Employees' Retirement Code ("PSERC"), 24 Pa.C.S. § 8102, which defined "Leave for service with a collective bargaining organization" in a manner similar to the description set forth in Section 5302(b)(2) of SERC of "creditable leaves of absence" from state service. Relevantly, Section 8102 of PSERC provides "that the employer shall fully compensate the member including, but not

6. At the time of the Commonwealth Court's decision in the instant case, this Court had not yet issued its decision in *Kirsch v. Public School Employees' Retirement Board,* 603 Pa. 439, 985 A.2d 671 (2009) (*"Kirsch II "*), affirming, under our own rationale, the Commonwealth Court.

limited to, salary, wages, pension and retirement contributions and benefits, other benefits and seniority, as if he were in full-time active service." 24 Pa.C.S. § 8102. The Board determined that this language meant that retirement credit is authorized only for the salary paid "as if" the member were in full-time service to the school district and not for any salary paid in excess of that amount. On appeal, the Commonwealth Court affirmed, adopting the Board's reasoning. *Kirsch I, supra* at 669.

In the instant case, the Commonwealth Court applied its rationale in *Kirsch I* to its interpretation of Section 5302(b)(2) of SERC. The court held:

Similarly, the words "compensate as if he were in full-time service" in section 5302(b)(2) of the SERC mean that the Commonwealth must pay troopers on "union leave" at the salary level commensurate with their regular positions. *Kirsch [I]*. Because the "union leave" provision here requires that the Commonwealth pay a different amount, *i.e.*, whatever [Appellant] designates, the provision requires that the Commonwealth violate section 5302(b) of the SERC.

*Pennsylvania State Troopers Ass'n, supra* at 445 (footnotes omitted).

Judge Pellegrini dissented on this issue, concluding that the majority's reliance on *Kirsch I* was inapt. Judge Pellegrini stated:

What the majority misperceives is that we are not being asked to review a Retirement Board decision as to what pension credit a police officer receives for the time he or she was "released for duty" when that police officer retires. At that time, the police officer can present evidence that the amount he or she received under the disputed arbitration provision is comparable to what he or she would receive "as if" he or she remained on full-time service when such things as overtime and extra-duty time are taken into consideration. The Retirement Board would then make a decision, which could be appealed subject to the normal administra-

tive agency scope of review. Until that occurs, that issue is not before us.

As to the issue before us—whether a board of arbitration can enter an interest arbitration award requiring the Commonwealth to pay a different amount of compensation other than the base amount of salary the union officer would receive—is determined by whether that requires the Commonwealth to do something that it could not do voluntarily. Other than the Retirement Code provisions, over which the Retirement Board has sole jurisdiction, the Commonwealth cites no provision, nor can I imagine one, that precludes it from voluntarily entering into an agreement requiring it to pay a police officer released from duty an amount different than its base rate, especially when it is at no cost to the Commonwealth. Because the Commonwealth could agree to the union leave provision voluntarily, there is no basis to vacate the award.

*Pennsylvania State Troopers Ass'n, supra* at 448 (footnote omitted) (Pellegrini, J., concurring and dissenting).

This Court accepted review on the following issue, as rephrased by this Court for clarity:

Did the Commonwealth Court err when it invalidated the wage provisions of an Act 111 interest arbitration award based upon a holding that the provisions violated the State Employees Retirement Code, 71 Pa.C.S. § 5302(b)(2)?

*Commonwealth v. Pennsylvania State Troopers Ass'n*, 605 Pa. 410, 990 A.2d 1146 (2010) (*per curiam* ).

As previously noted, our scope of review is extremely circumscribed. Arbitration awards issued pursuant to Act 111 are final and binding on the parties, with "no appeal" permitted to any court. 43 P.S. § 217.7. Act 111's requirement of "sure and swift" resolution of labor disputes regarding fire fighters and police officers, where the labor rights of such employees are not to be subject to protracted litigation, is an important legislative counterbalance to the circumstance that such employees are prohibited by law from striking. *Betancourt, supra* at 89–90; *City of Philadelphia v. FOP, Lodge No.*

*5*, 564 Pa. 290, 768 A.2d 291, 294 (2001). However, Act 111 arbitration awards are nonetheless subject to judicial review in the nature of narrow *certiorari*. *Id.* Such review, albeit highly constricted, allows for a balancing of the critical legislative goal of shielding arbitration awards from judicial modification and interference, with the recognition that the legislature did not grant arbitrators unlimited powers. *See FOP, Lodge No. 5, supra* at 296.

The Commonwealth Court correctly determined that if judicial review is permissible in the instant case, it is authorized only under the third prong of narrow *certiorari*, concerning the limits of the power or authority of the Act 111 arbitration panel. With respect to this prong, we have held:

> Our definition of what constitutes an excess of an arbitrator's powers is far from expansive. Essentially, if the acts the arbitrator mandates the employer to perform are legal and relate to the terms and conditions of employment, then the arbitrator did not exceed her authority.... Finally, we have stressed that a mere error of law will not support a finding that the arbitrator exceeded her powers.

*FOP, Lodge No. 5, supra* at 296–97 (citations and quotation marks omitted).

"This third prong does not provide a portal to unlimited review of an Act 111 arbitration award." *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, 595 Pa. 47, 938 A.2d 225, 230 (2007). With respect to our determination that the excess of authority prong prohibits an Act 111 arbitration award from "mandat[ing] that an illegal act be carried out," we have held that the award "may only require a public employer to do that which the employer could do voluntarily." *Betancourt, supra* at 90; *Fort Pitt Lodge No. 1, supra* at 230.[7]

---

7. This Court has recently held that the excess of authority prong invalidates Act 111 interest arbitration awards that "unduly infringe" upon the public employer's essential "managerial responsibilities." *City of Philadelphia v. International Ass'n of Firefighters, Local 22*, 606 Pa. 447, 999 A.2d 555, 571 (2010); *Borough of Ellwood City v. Pennsylvania Labor Relations Board*, 606 Pa. 356, 998 A.2d 589, 600 (2010). However, no argument has been raised in this case regarding whether

 The narrow issue before this Court is whether the disputed arbitration award provision requires the Commonwealth to perform an illegal act by directing the Commonwealth to pay wages for state troopers on union leave in amounts contrary to statute, namely Section 5302(b)(2) of the SERC. Because of the significant legislative policy goals behind the "no appeal" mandate of Act 111 and our concomitant narrowly constricted scope of review in Act 111 cases, we must discern that the disputed arbitration award provision violated Section 5302(b)(2) before such provision will be invalidated. Our standard of review for this issue is plenary. *See Town of McCandless v. McCandless Police Officers Ass'n,* 587 Pa. 525, 901 A.2d 991, 1000 (2006) ("Generally speaking, a plenary standard of review should govern the preliminary determination of whether the issue involved implicates one of the four areas of inquiry encompassed by narrow *certiorari,* thus allowing for non-deferential review—unless, of course, that preliminary determination itself depended to some extent upon arbitral fact-finding or a construction of the relevant CBA.").

Preliminarily, we must determine what this case is and is not about, as the parties have starkly different ideas on this matter. Appellant emphasizes that this case is simply about whether an Act 111 interest arbitration panel has the authority to enter an award regarding the salaries that state troopers on union leave shall receive commensurate for their additional duties. Appellant emphasizes that this case is about present-day working conditions, not about future events that concern issues not ripe for disposition. Appellant cites *Fort Pitt Lodge No. 1, supra* at 233 (holding that the possible future application and interpretation of an arbitration award has "no place in our analysis of whether the arbitrators committed an illegal act. . . .").

The Commonwealth, on the other hand, argues that the "compensation" language of Section 5302(b)(2) is "not severable" from the retirement benefit implications of such salaries. *See* Commonwealth's Brief at 7–8. Indeed, the Common-

the Commonwealth's essential managerial responsibilities have been "unduly infringed" upon.

wealth's argument before this Court focuses almost exclusively on the Commonwealth's concern that the affected employees will artificially enhance their retirement benefits if they draw union salaries greater than their state service salaries. *See id.* at 9–16 and 17–18.

We agree with Appellant, however, that this case is solely about whether the arbitration panel had the authority to enter its award regarding union-leave pay. This case is not about how the award will one day be interpreted by the agency charged with administering the SERC based on a record that will be created and arguments that will be made for that possible administrative proceeding.[8] This is a case falling under Act 111.

Section 1 of Act 111 provides in relevant part:

Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, ... have the right to bargain collectively with their public employers concerning the **terms and conditions of their employment, including compensation,** hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.

43 P.S. § 217.1 (emphasis added).

The disputed provision of the arbitration award in this case addresses union leave and the amount of compensation that state troopers shall receive while on union leave. The Commonwealth does not argue that such matters are not proper subjects for collective bargaining and interest arbitration under Section 1 of Act 111. Rather, the Commonwealth effectively argues that Act 111 is "trumped" by Section 5302(b)(2) of the SERC with respect to the level of compensation to be

8. It is instructive to note that the Commonwealth did not join as an indispensable party the State Employees' Retirement Board, the independent administrative board, having the powers and privileges of a corporation, which is the body **actually charged** with the administration of the State Employees' Retirement System. *See* 71 Pa.C.S. §§ 5901–05.

paid its unionized members serving additional duties with a union.

In fact, the SERC does partially repeal Act 111. Section 5955 of the SERC provides in relevant part:

### § 5955. Construction of part

Regardless of any other provision of law, **pension rights** of State employees shall be determined solely by **this part** or any amendment thereto, and no collective bargaining agreement nor any arbitration award between the Commonwealth and its employees or their collective bargaining representatives shall be construed to change any of the provisions herein, to require the board to administer pension or retirement benefits not set forth in this part, or otherwise require action by any other government body pertaining to pension or retirement benefits or rights of State employees. Notwithstanding the foregoing, any pension or retirement benefits or rights previously so established by or as a result of an arbitration award shall remain in effect after the expiration of the current collective bargaining agreement between the State employees so affected and the Commonwealth.....

71 Pa.C.S. § 5955 (emphasis added).

By its terms, this partial repealer of Act 111 is concerned overwhelmingly—perhaps exclusively—with employee pension and retirement rights, not the salary of union-leave employees. The "part" mentioned in Section 5955, which we emphasized for convenience of reference, pertains to "Part XXV" of Title 71, entitled "Retirement for State Employees and Officers," which the General Assembly also determined "shall be known and may be cited as the" SERC. 71 Pa.C.S. § 5101. Section 5302(b)(2) of the SERC is found in a chapter of this Part concerning "Membership, Credited Service, Classes of Service, and Eligibility for Benefits." As previously noted, Section 5302(b)(2) is also a subsection of a provision addressing "credited state service." 71 Pa.C.S. § 5302. In turn, "credited service" is relevantly defined as "state or creditable nonstate service for which the required contributions have been made

... or for which salary deductions or lump sum payments have been agreed upon in writing." 71 Pa.C.S. § 5102.

Unmistakably, the SERC, including Section 5302 and its subsection (b)(2), is intended to address the pension rights and obligations of state employees. It does not purport to address the **pre**-retirement concern of the level or amount of employee salaries. As indicated *supra,* **that concern** rests with Act 111, with respect to the category of state employees represented by Appellant herein.

Does Section 5302(b)(2) nonetheless, as argued by the Commonwealth and determined by the Commonwealth Court majority, place an actual ceiling on what an employee may receive in salary or compensation while on union leave, irrespective of pension rights and obligations? Section 5302(b) addresses "creditable leaves of absence" for purposes of determining "credited state service." *See generally* 71 Pa.C.S. § 5302. Subsection (b)(2) gives service credit to, in relevant part:

(2) An active member on paid leave granted by an employer for purposes of serving as an elected full-time officer for a Statewide employee organization which is a collective bargaining representative under the act of June 24, 1968 (P.L. 237, No. 111), referred to as the Policemen and Firemen Collective Bargaining Act [and, also, as Act 111], or the act of July 23, 1970 (P.L. 563, No. 195), known as the Public Employe Relations Act ...: **Provided,** That for elected full-time officers such leave shall not be for more than three consecutive terms of the same office ...; **that the employer shall fully compensate the member,** including, but not limited to, salary, wages, pension and retirement contributions and benefits, other benefits and seniority, **as if he were in full-time active service;** and that the Statewide employee organization shall fully reimburse the employer for all expenses and costs of such paid leave, including, but not limited to, contributions and payment in accordance with sections 5501, 5505.1 and 5507, if the employee organization either directly pays, or reimburses the Commonwealth or

other employer for, contributions made in accordance with section 5507.

71 Pa.C.S. § 5302(b)(2) (emphasis added).

In *Kirsch II*, we interpreted proviso language of Section 8102 of the PSERC that closely tracks the proviso language set forth in Section 5302(b)(2) of the SERC relevant to the instant case.[9] We stated that the PSERC Section 8102 proviso reference to "fully compensate the member ... as if he were in full-time active service" was not merely a condition precedent for credited service while on union leave. We opined that this language imposed some actual conditions on the union service itself.[10] *Kirsch II, supra* at 675.

However, this conclusion is not dispositive of the issue now before this Court. First, there are critical differences be-

**9.** Section 8102 of the PSERS defines "[l]eave for service with a collective bargaining organization" as:

Paid leave granted to an active member by an employer for purposes of working full time for or serving full time as an officer of a Statewide employee organization or a local collective bargaining representative ... **Provided ... the employer shall fully compensate the member,** including, but not limited to, salary, wages, pension and retirement contributions and benefits, other benefits and seniority, **as if he were in full-time active service;** and that the employee organization shall fully reimburse the employer for such salary, wages, pension and retirement contributions and benefits and other benefits and seniority.

24 Pa.C.S. § 8102 (emphasis added).

**10.** We stated as follows:

While the definition of "leave for service with a collective bargaining organization" controls whether an employee should receive credit for years on leave, the definition provides more than just an index of requirements to be satisfied in order for an employee to receive retirement credit. It also provides a detailed list of what forms of compensation must be paid by both the employer and the collective bargaining organization. Considering the detail on this point provided by the General Assembly, it is clear the definition concerns not only whether an employee qualifies for leave, but also the amount of compensation and retirement credit to be received while serving outside the regular position on approved leave. The Commonwealth Court did not err by considering the "leave for service with a collective bargaining organization" definition in determining the amount of approved leave compensation to be included in appellants' retirement calculations.

*Kirsch II, supra* at 675.

tween *Kirsch II* and the instant case. *Kirsch II* did not involve the issue of whether public school employees on union leave should be paid in line with their school employee salaries. It was accepted in *Kirsch II* that such employees **are** simply paid more while on union leave, commensurate with their union duties. The only issues in *Kirsch II* were whether the employees should receive credit for these higher salaries for purposes of computing their retirement pension benefits, and whether the higher union salaries artificially enhanced or inflated their retirement benefits. *See id.* at 672. *Kirsch II* arose from an appeal from a decision of the Public School Employees' Retirement Board interpreting its mandate under the PSERC. Significantly, it did not arise from an appeal of an interest arbitration award under Act 111 or the Public Employe Relations Act [11] that set the salaries of employees on union leave. *Kirsch II* dealt with post-employment retirement matters, not the salary requirements of present employees, which are at issue in the instant case.

Thus, *Kirsch II* did not concern itself with the unique question of the authority of an Act 111 interest arbitration panel to enter an award concerning union-leave employee salaries, an authority that patently exists under Section 1 of Act 111. Further, although *Kirsch II* did opine that proviso language in PSERC Section 8102 sets conditions on union service, *Kirsch II* did not define the full limit of what those conditions were, which was not the issue then before the Court. Therefore, we do not read *Kirsch II* as compelling the conclusion that the relevant proviso language of Section 5302(b)(2) of the SERC establishes a legislative ceiling on what state troopers on union leave may receive as salary. Again, the instant case does not involve the calculation of pensions but the essential authority of an Act 111 interest arbitration panel to set salaries.

More instructive is *Pinto v. State Civil Service Commission,* 590 Pa. 311, 912 A.2d 787 (2006), wherein we interpreted Section 5302 of the SERC in the context of whether a state

11. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

corrections officer, while on union leave, was subject to the prohibition against political activity imposed by Section 905.2 of the Civil Service Act.[12] In concluding that such employee was exempt from this prohibition, we took note of the "plain language of SERC § 5302," which anticipated "leave, full-time employment, and an outside source of compensation." *Pinto, supra* at 795. We further noted that this "plain language" reflected the General Assembly's understanding that the employee on union duty leaves a civil service post for a non-civil-service post, freeing that employee from certain constraints imposed upon state civil service employees. *Id.*

We determined:

On balance, we find it difficult to imagine that the legislature intended to free a member of the classified service to take a temporary leave to serve as an elected officer of an employee organization but did not intend him to be free to serve as a spokesman for that organization unfettered by the [Civil Service Act] § 905b political activity prohibition. **Section 5302 of SERC bespeaks the legislature's intention that members of the civil service be free to pursue terms of employment as elected officers of labor unions without sacrificing tenure for purposes of retirement benefits, which above all suggests an intention not to discourage members from pursuing such employment.** To permit someone to take such a position but impose a limitation on his speech broad enough to compel him to look over his shoulder and second-guess virtually every public act or statement he makes in that capacity would be absurd and would disserve the manifest intent of the legislature.

*Pinto, supra* at 797 (emphasis added).

Clearly, the proviso language of Section 5302(b)(2) was not intended to penalize employees for serving with unions by depriving them of the benefits of their state service while so serving. In fact, it was intended **not** to discourage union duty. Because *Pinto* interprets Section 5302 as a protective force for relevant state employees on union leave, not as a limiting

12. Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. § 741.905b.

force, it would be anomalous to interpret Section 5302(b)(2) as intentionally or effectively restricting an Act 111 interest arbitration panel from awarding a union salary higher than the salary the employee would have received "as if" the employee had not elected to perform union duty. Pursuant to *Pinto,* a reasonable interpretation of the disputed proviso language of Section 5302(b)(2) is that it is simply meant to not deprive the employee on union leave of the many applicable forms of remuneration of his or her state service.

■ When we apply relevant principles of statutory construction, we arrive at the same result. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). "In giving effect to the words of the legislature, we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear." *Mishoe v. Erie Insurance Co.,* 573 Pa. 267, 824 A.2d 1153, 1155 (2003) (quoting *O'Rourke v. Department of Corrections,* 566 Pa. 161, 778 A.2d 1194, 1201 (2001)).

■ To the extent the proviso language stating "the employer shall fully compensate the member ... as if he were in full-time active service" may be read as a limitation on the power of interest arbitration panels to set salaries commensurate with union duties rather than with the duties of state service, then the language is ambiguous as it may be read in another manner as well. Words of a statute are ambiguous when there are at least two reasonable interpretations of the text under review. *Delaware County v. First Union Corp.,* 605 Pa. 547, 992 A.2d 112, 118 (2010); *Barasch v. Pennsylvania Public Utility Comm'n,* 516 Pa. 142, 532 A.2d 325, 332 (1987).

The Statutory Construction Act of 1972 provides that "among other" statutory construction factors that may be applied to resolve ambiguities, "the intention of the General Assembly may be ascertained by considering":

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c).

Moreover, "[t]he title and preamble of a statute may be considered in the construction thereof ... [and] headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof." 1 Pa.C.S. § 1924.

Applying the above relevant principles of statutory construction to Section 5302(b)(2), one simply returns to the ineluctable, indeed obvious, conclusion that the General Assembly, in enacting this section and the SERC as a whole, was singularly concerned with establishing rights and duties regarding retirement benefits, and the administration of the retirement system. This is simply the extent of the concern of the SERC and its component parts. *See* discussion *supra*. It is not in the least evident that the General Assembly was concerned with placing a ceiling on what an interest arbitration panel might award as salary to employees serving on union duty.

Moreover, focusing on the principle of statutory construction regarding "the consequences of a particular interpretation," we are unable to avoid another plain and pertinent fact. The Commonwealth is simply not harmed by the arbitration award provision allowing for salaries for employees on union leave to be set higher than those salaries the employees would have received had they not elected union duty. The award

provides, as does Section 5302(b)(2), that the Commonwealth shall be reimbursed for the amount it compensates the employees while on union leave, whether the employees are paid their regular state salaries or whether the employees are paid on the level of a potentate.

Accordingly, we hold that because the arbitration award provision regarding salary of State Troopers on union leave does not violate Section 5302(b)(2) of the SERC, such provision does not require the Commonwealth to perform an illegal act, or one that it may not voluntarily undertake. Accordingly, the provision is within the authority of the interest arbitration panel to award. As such, the arbitration award provision is beyond any court's scope of review.[13]

The order of the Commonwealth Court is reversed to the extent that it is contrary to this decision, and this matter is remanded for treatment consistent with our determination.

Jurisdiction relinquished.

Justices BAER and TODD join the Opinion Announcing the Judgment of the Court.

Justice ORIE MELVIN concurs in the result.

**13.** In his dissenting opinion, Justice Saylor articulates a different interpretation of Section 5302(b)(2), which, respectfully, we find unpersuasive. Justice Saylor opines that our interpretation would create "an untenable administrative burden on the Commonwealth," a charge that is wholly unsupported by any evidence of record and not advanced by the Commonwealth itself. Indeed, we believe that the Commonwealth is fully capable of addressing what would appear to be a simple accounting matter, as it has shown itself capable of handling the myriad accounting issues imposed by the complex requirements of the federal and state tax codes. As almost anyone who receives a paycheck from the Pennsylvania Treasury has observed, the Commonwealth's accountants are fully capable of reporting an employee's income for one purpose in a manner that is different from that used for another purpose and, at the same time, closely tracking an employee's retirement status. More critically, a helpful desire to ease the burdens of the Commonwealth's accountants concerning at most a handful of people each year is not grounds for the judiciary to exercise power in an area—state trooper wages—exclusively reserved by the General Assembly for Act 111 arbitrators. We believe that more must be shown to establish that the arbitration award has violated Section 5302(b).

Chief Justice CASTILLE files a dissenting opinion in which Justice EAKIN joins.

Justice SAYLOR files a dissenting opinion in which Chief Justice CASTILLE joins.

Chief Justice CASTILLE, dissenting.

I join the dissenting opinion by Mr. Justice Saylor. I write separately to discuss an additional point of disagreement with the Opinion Announcing the Judgment of the Court ("OAJC").

I believe the OAJC has not persuasively distinguished our decision in *Kirsch v. Public School Employees' Retirement Board*, 603 Pa. 439, 985 A.2d 671 (2009). Indeed, in my view, *Kirsch* controls, and directs that we affirm the Commonwealth Court's decision vacating the "union leave" provision of the arbitration award in this case.

In *Kirsch*, school district employees on "union leave" received more compensation while working privately for the union than they would have received had they continued as public employees in their regular school district positions. When these employees filed retirement applications, the Public School Employees' Retirement System ("PSERS") used the standard compensation they would have received as regular school district employees—not the enhanced private union pay—for purposes of determining the employees' final average salaries for retirement benefit calculations. PSERS rejected the employees' challenge to this decision, the Commonwealth Court affirmed and, ultimately, this Court agreed that the on-leave employees were not entitled to enhancement of their public retirement benefits as a result of the enhanced pay they received for their private union work. *Id.* at 672 ("[T]he statute allows only the salary corresponding with the position held at the school district during the approved leave [to] be credited to the retiree's retirement earnings; inclusion of increased, union-provided compensation artificially and impermissibly enhances or inflates retirement benefits under the Retirement Code . . . .").

In affirming, we considered the language in 24 Pa.C.S. § 8102 which requires the school district employer to "fully compensate" its on-leave employees "as if [they] were in full-time active service" with the school district.[1] 985 A.2d at 675. We concluded that it was "clear the definition concerns not only whether an employee qualifies for leave, but also the amount of compensation and retirement credit to be received while serving outside the regular position on approved leave." *Id.* We further stated that nothing in the statutory scheme "suggests the General Assembly meant for union employees to receive greater retirement benefits than other union members who chose to stay in their school positions or are not given the opportunity to work for the union." *Id.* at 677. Thus, in *Kirsch,* we viewed the statutory language "as if he were in full-time service" to provide both a floor and a ceiling for the amount of compensation that could properly be credited to the on-leave employee for purposes of retirement benefit calculations. We specifically held that the "union-approved salary, which exceeded the School District standard salary, may appropriately be excluded.... [U]nder the statute, only the salary corresponding with the position held at the school district during the approved leave may be credited to retirement earnings." *Id.* at 678 (footnote omitted). The holding could not be otherwise, given the plain language of the statute and the fact that we are speaking of public funds here; the private entity may enhance pay of the on-leave member as it feels appropriate, but the public is not obliged to recompense an artificially enhanced retirement benefit.

The very same language that created a ceiling for the salaries of on-leave public employees for the purposes of retirement benefit calculations in *Kirsch* appears in the statute before us in this case. Section 5302(b) of the State Employees' Retirement Code, which applies to the state troopers here, provides that an on-leave state employee shall be

1. Section 8102 specifically requires the school district employer to "fully compensate the member, including but not limited to, salary, wages, pension and retirement contributions and benefits, other benefits and seniority, as if he were in full-time active service...." 24 Pa.C.S. § 8102.

compensated "as if he were in full-time active service." 71 Pa.C.S. § 5302(b)(2).[2] The OAJC attempts to distinguish the meaning of the phrase in Section 5302(b)(2) from the meaning of the very same qualifier in 24 Pa.C.S. § 8102 as interpreted in *Kirsch*, but I am unpersuaded. Together with Justice Saylor's explanation of how the OAJC has severed the instant salary question from its inevitable impact on retirement benefits, *Kirsch* compels me to conclude that the arbitrator's award regarding payment during union leave contravenes 71 Pa.C.S. § 5302(b)(2), and is therefore illegal. Accordingly, I cannot join the decision to uphold it.

Justice EAKIN joins this opinion.

Justice SAYLOR dissenting.

The lead opinion appears to recognize that, in providing for "creditable leaves of absence" under the Retirement Code—subject to the proviso that the Commonwealth is to compensate an employee on leave for union service "as if he were in full-time active service," 71 Pa.C.S. § 5302(b)(2)—the General Assembly's intent was to preserve the ongoing accrual of retirement benefits for employees. *See* Opinion Announcing the Judgment of the Court, *Op.* at 73, 23 A.3d at 976–77. Nevertheless, according to the lead opinion, an Act 111 arbitrator has the legal authority to disregard the statute's manifest retirement-related design and require the Commonwealth to tender to an on-leave employee more than the statutorily authorized payments, thus decoupling the payment scheme from its foundation. *See id.* at 66–67, 73–74, 23 A.3d at 972–73, 976–77. The lead Justices posit that there is no harm, because the Commonwealth obtains reimbursement from the union, and any adverse impact on the retirement system may

**2.** Just like the statute at issue in *Kirsch*, Section 5302(b)(2) provides that "the employer shall fully compensate the member, including but not limited to, salary, wages, pension and retirement contributions and benefits, other benefits and seniority, as if he were in full-time active service ..." 71 Pa.C.S. § 5302(b)(2). *See Kirsch*, *supra* at 675 (quoting from 24 Pa.C.S. § 8102).

be corrected on some later occasion and in some different forum. *See id.* at 73-74, 23 A.3d at 976–77.

The difficulty, however, is that, to the degree Act 111 arbitrators disturb the statutory compensation scheme, they create an untenable administrative burden on the Commonwealth and the retirement system. In this regard, in order to comply with their statutory duties, the Commonwealth employer and the retirement system must create a dual tracking system to account for both payments actually made by the Commonwealth and as-if-in-full-time-active-service components. Controversy over the appropriate administration of such a system—which certainly was not contemplated by the Legislature in prescribing as-if-in-full-time-active-service payment in the first instance—is bound to yield uncertainty and litigation.

My comments on the consequences of the lead opinion's approach are responsive to the pronouncement that there is no harm, which the lead Justices offer to bolster their decision divorcing a statutory rate-of-pay provision from its roots in the pension context. My remarks are not based on some "helpful desire to ease the burdens of the Commonwealth's accountants," as the lead opinion suggests. Opinion Announcing the Judgment of the Court, *Op.* at 75 n. 13, 23 A.3d at 977 n. 13. In my view, the maintenance of an integrated scheme of compensation and retirement accrual is compelled by the enabling statute, *i.e.,* the Retirement Code. I also remain of the belief that the lead Justices underestimate the degree of ongoing uncertainty, controversy, and expense attending their decision to sanction a decoupling of the rate of pay tendered by a governmental employer to employees on leave for union service from the statutory foundation.

Additionally, I differ with the lead's position that the matter of wages for such on-leave state employees is "exclusively reserved by the General Assembly for Act 111 arbitrators." *See id.* To the contrary, the Legislature itself expressly indicated in the Retirement Code (which serves as the sole statutory basis for payment of government employees on leave for union service in the first instance) that such personnel were to be compensated by the government "as if [the employee] were in full-time active service." 71 Pa.C.S. § 5302(b)(2).

Moreover, the Legislature specifically limited the authority of arbitrators in the Retirement Code arena. *See id.* § 5955 (providing, *inter alia,* that "no collective bargaining agreement nor any arbitration award ... shall be construed to change any of the provisions herein").

I fully appreciate that Commonwealth employees on leave for union service often undertake additional duties and responsibilities, warranting higher compensation from the bargaining unit. The Association has not explained, however, why additional compensation, commensurate with the non-governmental work performed, cannot be afforded outside the parameters of a defined scheme of compensation from the Commonwealth tailored for retirement purposes.

Chief Justice CASTILLE joins this Dissenting Opinion.