**CITY OF BEAVER FALLS, Appellant**

v.

**BEAVER FALLS POLICE ASSOCIATION.**

Commonwealth Court of Pennsylvania.

Argued June 17, 2013.
Decided Sept. 18, 2013.

Gregory Gleason, Pittsburgh, for appellant.

Eric C. Stoltenberg, Pittsburgh, for appellee.

BEFORE: SIMPSON, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge BROBSON.

Appellant City of Beaver Falls (City) appeals from an order of the Court of

Common Pleas of Beaver County (trial court), which denied the City's request to vacate a supplemental arbitration award in favor of Appellee Beaver Falls Police Association (Union). The supplemental award directed the City to reinstate Patsy Perretta (Grievant) as a police officer and to render him financially whole for the period of time that he had been out of the workforce following the end of his one-year suspension from employment. For the reasons set forth below, we affirm.

On October 29, 2008, while he was employed as a patrol officer with the Beaver Falls Police Department, Grievant temporarily disrobed himself at a local bar. (Reproduced Record (R.R.) at 151a.) As a result, the City suspended Grievant and, ultimately, discharged him from employment for conduct unbecoming of a police officer. (R.R. at 153a, 258a.) Grievant, through the Union, challenged his termination using the grievance procedures contained in the Collective Bargaining Agreement (CBA) that was in effect between the City and the Union. (Id. at 153a.) In accordance with the terms of the CBA, the matter then proceeded to binding arbitration under Act 111.[1] (Id. at 258a.) Following a hearing, on August 13, 2009, Arbitrator Matthew M. Franckiewicz (Arbitrator) issued a grievance award overturning Grievant's termination

from employment. (Id. at 158a.) Specifically, the Arbitrator converted the termination into a one-year disciplinary suspension without pay. (Id.) The Arbitrator also ordered the City to reinstate Grievant promptly and without loss of seniority. (Id.) Finally, the Arbitrator retained jurisdiction "for the limited purpose of resolving any disputes that may arise in connection with" the relief awarded. (Id.) The City petitioned the trial court to vacate the Arbitrator's award. (Id. at 159a.) On March 12, 2010, the trial court denied the City's petition to vacate the award. (Id. at 166a.) The City appealed to this Court.

By letter dated August 23, 2010, the City informed Grievant of its decision to "recall [him] to his employment pursuant to the [Arbitrator's award]." (Id. at 47a.) The City also, inter alia, informed Grievant that (1) he would need to be recertified by the Municipal Police Officers Education and Training Commission (Commission), (2) he would need to undergo medical and psychological evaluations, and (3) it would provide him "with a calculation of back pay."[2] (Id. at 47a–48a.) Finally, the City directed Grievant to contact promptly the Chief of Police, Charles Jones (Chief Jones), to arrange his recertification through the Commission to serve as a

1. Act of June 24, 1968, P.L. 237, as amended, 43 P.S. §§ 217.1–.10 (Policemen and Firemen Collective Bargaining Act commonly referred to as "Act 111"). Act 111 pertains to the rights of police officers to bargain collectively with their public employers regarding the terms and conditions of the employment, including pensions and other benefits, and, if they fail to reach an agreement, to proceed to arbitration for resolution. Northampton Twp. v. Northampton Twp. Police Benevolent Ass'n, 885 A.2d 81, 82 n. 1 (Pa.Cmwlth.2005), appeal denied, 588 Pa. 753, 902 A.2d 1243 (2006).

2. In the City's letter of August 23, 2010, the City wrote that it "has decided to recall

[Grievant] to his employment" pursuant to the 2009 arbitration award. (R.R. at 47a.) The City noted that Grievant "will have to recertify before he can resume duties as an officer," and that the City would require Grievant to "attend certification classes and/or examinations[,]" "recertify for firearms[,]" and "attend a medical examination and a psychological examination[,]" and that the City would pay for his time spent in attending the examinations and certifications. (Id.) Also, the City stated that it would provide "a calculation of [Grievant's] back pay, which [it] believe[s] is owed[.]" (Id. at 47a–48a.)

police officer and to schedule the medical and psychological examinations. (*Id.* at 48a.)

Grievant complied. (*Id.* at 264a.) He contacted Chief Jones, who set up a physical and psychological examination for Grievant. (*Id.* at 87a, 264a.) Grievant's physical examination did not raise any concerns. (*Id.* at 264a.) Reverend Paul L. Holland, Ph.D. (Dr. Holland), administered the psychological examination on the City's behalf. (*Id.* at 50a.) After administering a battery of tests, Dr. Holland opined that Grievant was not "psychologically fit for or capable of exercising appropriate judgment and restraint to be certified as a police officer in Pennsylvania." (*Id.* at 53a.) He further observed:

> I feel that presently he is at risk. My feeling is that as his current stress subsides, he may rise above his current emotional instability and acceptably perform as a police officer. Should he be put on probation for a time to allow emotional—stabilization—at no expense to the city—I would be willing to meet with him and report his progress to Chief Jones. I would like to see him become a productive police officer.

(*Id.*) By letters dated September 21, 2010, Dr. Holland informed both Chief Jones and Grievant of the results of the psychological examination. (*Id.* at 52a.) On September 28, 2010, the City filed with this Court a praecipe to discontinue its appeal relating to the 2009 arbitration award. (*Id.* at 169a.) On October 1, 2010, we marked the appeal as discontinued. (*Id.* at 173a.)

Following his receipt of Dr. Holland's letter, Chief Jones contacted the Commission. (*Id.* at 55a.) Specifically, he informed the Commission of Grievant's one-year suspension and psychological problems. (*Id.* at 56a.) By letter dated January 31, 2011, the Commission, through its

Executive Director, responded to Chief Jones. (*Id.* at 57a.) In addressing Chief Jones' concerns about Grievant's psychological problems, the Commission observed that "[i]t *appears* from [the] information [provided] that [Grievant] is not presently eligible for certification. However, since [Grievant] is neither currently certified nor has a pending application for certification, the Commission *will not be taking any formal action at this time.*" (*Id.* (emphasis added).)

By letter dated March 29, 2011, the City notified Grievant that it would be holding a hearing before the City Council (Council) on April 12, 2011, to determine whether Grievant had abandoned his employment with the City. (*Id.* at 58a.) Specifically, the City alleged that it had not heard from Grievant since at least September 30, 2010. (*Id.*) Also, another purpose of the Council hearing was to determine whether, given his lack of certification and unsatisfactory psychological examination results, Grievant would be eligible to return to employment as a police officer. (*Id.*)

In response, by letter dated April 1, 2011, Grievant, through his attorney, disputed the City's factual allegations. (*Id.* at 61a.) Specifically, he noted that the City did not comply with the Arbitrator's 2009 award because it failed to reinstate Grievant. (*Id.* at 62a.) As a result of the City's failure to reinstate him, Grievant argued that, instead of the Council, the Arbitrator continued to have jurisdiction over the matter. (*Id.*) Finally, because Grievant challenged the Council's jurisdiction, he informed the City that he would not participate at the scheduled hearing. (*Id.*) On the same day, Grievant's attorney wrote to the Arbitrator to request a compliance hearing to determine whether the City had fulfilled its obligations under the 2009 award. (*Id.* at 65a.) Ultimately, the

Arbitrator scheduled a hearing for September 6, 2011. (*Id.* at 73a, 188a.)

In the meantime, convinced that it had jurisdiction over the issue of job abandonment, the Council conducted its hearing as scheduled without Grievant or his attorney present. (*Id.* at 8a.) Following the hearing, the Council terminated Grievant on the basis that he abandoned his employment with the City.[3] (*Id.* at 267a.)

On April 26, 2011, Grievant saw James T. Flannick, Psy. D. (Dr. Flannick), with whom he met on six subsequent occasions until June 10, 2011. (*Id.* at 267a–68a.) Based on his psychological examination of Grievant, Dr. Flannick concluded that Grievant was suitable for reinstatement into the police force. (*Id.*)

On September 6, 2011, the Arbitrator conducted a compliance hearing at which only Grievant testified. (Supplemental Opinion and Award (Supplemental Award), attached to the City's Brief, at 6.) On November 29, 2011, the Arbitrator issued the Supplemental Award. The issues before the Arbitrator were (1) whether the City, in satisfaction of its obligation under the August 13, 2009 award, offered reinstatement to Grievant and (2) whether the City had complied with the "make whole" provision of the same award. (*Id.* at 8.)

As the Arbitrator noted in his Supplemental Award, the Union argued that the City did not reinstate Grievant. (*Id.* at 6.) The Union also asserted that the City failed to communicate with Grievant following his psychological examination by Dr. Holland. (*Id.*) In fact, the Union argued that, instead of contacting Grievant, the City simply sent the psychological examination report to the Commission and did not inform Grievant of the City's position on the report or the Commission's response thereto. (*Id.*) The Union also argued that the City never applied to have Grievant recertified by the Commission. (*Id.*) With regard to the make-whole provision, the Union argued that the City failed to provide Grievant with a back-pay calculation. (*Id.*) Specifically, the Union asserted that the City owed Grievant back pay from the date his one-year suspension terminated until the present. The Union requested that the City cooperate with Grievant in good faith to assist him in obtaining recertification. (*Id.* at 7.)

In response, the City argued that the Arbitrator lacked jurisdiction because the matter at issue did not involve reinstatement, but rather abandonment of employment. (*Id.*) Specifically, the City argued that it had offered Grievant reinstatement on August 23, 2010. (*Id.*) Following the offer of reinstatement, the City asserted that Grievant underwent, *inter alia*, a psychological examination, which indicated that he was unfit to serve as a police officer. (*Id.*) It further asserted that Grievant knew of the outcome of the examination and that he and the Union remained silent for about six months until they were notified of the Council hearing. (*Id.* at 7–8.) Accordingly, based on these facts that arose subsequent to its August 23, 2010 offer of reinstatement to Grievant, the City argued that the Council, and not the Arbitrator, had jurisdiction over the dispute. (*Id.* at 7.) The City also argued that the purpose of the Council hearing was not to consider reinstatement, but to

---

3. The Union appealed the Council's adjudication to the trial court, requesting the trial court to declare it null and void. The trial court, however, dismissed the appeal on October 24, 2011. It held that because "both parties have participated in further proceedings before the Arbitrator and are presently awaiting his decision, this matter is prematurely before the [trial court]." (Trial Court Opinion and Order, attached to Union's Br., at 2.)

determine whether Grievant had abandoned his job in light of his lack of contact with the City. (*Id.* at 8.) The City pointed out that Grievant did not seek another psychological examination until after the Council hearing when he saw Dr. Flannick. (*Id.*) Finally, the City argued that it was not required to offer back pay to Grievant for the period when he was not certified as a police officer. (*Id.*)

Addressing the issue of reinstatement, the Arbitrator concluded that the August 23, 2010 letter did not "amount to a clear, unequivocal and unconditional offer of current employment." (*Id.* at 10.) Specifically, the Arbitrator observed that the letter, at most, "announces a determination by the [City] to offer reinstatement at some future time. [It] does not state a reporting date or otherwise indicate that [Grievant] may resume working contemporaneously." (*Id.*) The Arbitrator also concluded that the "letter does not constitute a valid and sufficient offer of reinstatement." (*Id.*) The Arbitrator essentially reasoned that Grievant could not have abandoned his job when the City failed to reinstate him pursuant to the 2009 award. (*Id.* at 11.) He observed that Grievant's lapse in certification likely was caused by the City's delay in implementing the 2009 award. The Arbitrator further concluded that back pay for Grievant continued to accrue until the City satisfied its obligation to offer reinstatement to Grievant. (*Id.* at 13.) Finally, the Arbitrator directed the City to "act in good faith to meet any certification requirements" that may be necessary for purposes of recertifying Grievant. (*Id.*)

On December 23, 2011, the City petitioned the trial court to vacate the Supplemental Award. (R.R. at 257a.) The City argued, *inter alia,* that the Arbitrator (1) exceeded his jurisdiction by considering issues that fell outside of the August 13, 2009 award, (2) exceeded his authority by ordering the City to perform illegal acts by reinstating and offering back pay to Grievant who was not certified (or eligible to be recertified) as a police officer by the Commission, and (3) exceeded his jurisdiction by overruling the Commission's decision concerning Grievant's recertification. (*Id.* at 259a–62a.)

On November 1, 2012, the trial court issued a "Memorandum Opinion and Order," denying the City's petition to vacate the Supplemental Award. (*Id.* at 290a–302a.) [4] The trial court first concluded that the Arbitrator properly reserved jurisdiction to hear issues relating to the implementation of the 2009 award that, *inter alia,* directed the City to offer reinstatement to Grievant. The trial court then concluded, based in part on its interpretation of the Municipal Police Education and Training Law (MPETL), 53 Pa.C.S. §§ 2161–2171, and related regulations, that the Arbitrator did not order the City to perform an illegal act by offering reinstatement to Grievant. The trial court noted that the City failed to satisfy the reinstatement requirement of the 2009 award and, as a result, the Arbitrator had continued authority to direct the City to comply with the award. The trial court also noted that the City never applied to have Grievant recertified by the Commission. Moreover, the trial court agreed with the Arbitrator that back pay for Grievant continued to accrue, because the City failed to make a valid reinstatement offer to Grievant. Finally, the trial court reasoned that the Arbitrator did not invade the Commission's jurisdiction, be-

---

**4.** The Memorandum Opinion served as the trial court's opinion under Pennsylvania Rule of Appellate Procedure 1925(a).

cause the Commission never rendered a formal ruling on Grievant's eligibility to serve as a police officer.

On appeal, the City advances three arguments. First, the City argues that the Arbitrator lacked jurisdiction because the August 13, 2009 award only applies to reinstatement and back pay, not job abandonment. Specifically, the City argues that Grievant abandoned his job, and the issue of job abandonment was neither contemplated nor reserved by the 2009 award. As such, the issue was properly before the Council. Second, it argues that the Arbitrator exceeded his authority by directing the City to perform an illegal act. In particular, the City argues the Supplemental Award violated Section 2167(b) of the MPETL, 53 Pa.C.S. § 2167(b), to the extent that it ordered the City to offer back pay to Grievant for the period of time when he was not certified to serve as a police officer. Also, it argues that the Supplemental Award is unlawful to the extent it directs the City to reinstate Grievant, whom Dr. Holland adjudged to be unfit for duty. Third, the City argues that the Arbitrator "usurped the statutory and regulatory role reserved to the [Commission]." (Appellant's Br. at 19.)

■ It is well settled that a judicial review of a grievance arbitration award arising under Act 111 is in the nature of narrow certiorari. *Town of McCandless v. McCandless Police Officers Ass'n*, 587 Pa. 525, 533, 901 A.2d 991, 996 (2006). "[T]he narrow certiorari scope of review limits courts to reviewing questions concerning: (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights." *Pa. State Police v. Pa. State Troopers' Ass'n (Betancourt)*, 540 Pa. 66, 79, 656 A.2d 83,

89–90 (1995). An arbitrator "may not mandate that an illegal act to be carried out" or require a public employer to do that which the employer could not do voluntarily. *Id.*, 656 A.2d at 90. "[A] mere error of law will not support a finding that the arbitrator exceeded [his] powers." *Cmwlth. v. Pa. State Troopers Ass'n*, 611 Pa. 56, 65, 23 A.3d 966, 971 (2011). In the instant case, the City challenges the Supplemental Award on the basis that the Arbitrator lacked jurisdiction and exceeded his powers.

■ We first address the issue of whether the Arbitrator had jurisdiction over what the City claims was Grievant's abandonment of employment. We observe that before the Arbitrator could even analyze whether Grievant abandoned his employment with the City, he logically had to determine whether the City had offered reinstatement (or reinstated) Grievant. Here, the Arbitrator concluded, based on the evidence presented, that the City did not make a valid offer of reinstatement to Grievant. Because the Arbitrator reserved jurisdiction over the issue of reinstatement in his 2009 award, which became final and binding on the parties once the City discontinued its appeal in 2010, the Arbitrator properly exercised jurisdiction over the Union's charge that the City failed to comply with the 2009 award.

We next address the City's argument that the Arbitrator exceeded his powers by ordering the City to perform an illegal act. Specifically, the City argues that the Arbitrator's Supplemental Award is illegal because it directed the City (1) to reinstate Grievant, who is unfit to serve as a police officer, and (2) to offer him back pay for the period of time when he was not certified as a police officer.[5]

5. We note that although the City appealed the 2009 award to the trial court, either the City

did not argue that the 2009 award was illegal to the extent that it required the City to pay

■ With regard to the matter of reinstatement, the City asserts that the Arbitrator's award directs the City to perform an illegal act, because it directs that Grievant be reinstated despite the Commission's determination that Grievant is ineligible to be recertified as a police officer based on his psychological evaluation. We disagree. The Arbitrator found that the City failed to comply with the 2009 award, because the 2010 offer of reinstatement did not "amount to a clear, unequivocal and unconditional offer of current employment" and thus was not a "valid and sufficient offer." (Supplemental Award at 10.) As the trial court aptly observed, the Commission did not make a ruling on this issue, but, at best, merely rendered an informal advisory opinion. Indeed, in its letter to the City, the Commission acknowledged that "since [Grievant] is neither currently certified nor had a pending application for certification, the Commission will not be taking any formal action at this time." (R.R. at 57a.) Furthermore, it is undisputed that the City failed to apply to have Grievant recertified, thereby depriving the Commission of the opportunity to issue a formal ruling. We, therefore, cannot conclude that Grievant was ineligible to be recertified as a police officer. As such, we cannot further conclude that the Arbitra-tor's award directs the City to perform an illegal act. Until such time as the Commission acts on an application for certification of Grievant, this issue is premature.

If, following the submission of an application, the Commission ultimately certifies Grievant, then the City cannot argue that it is being required to perform an illegal act by reinstating him. On the other hand, if the Commission ultimately denies the application to certify Grievant, *then* the City could seek to modify the arbitration award, by arguing that reinstatement would require the City to perform an illegal act.

■ With regard to the matter of back pay, the City asserts that the Arbitrator directed it to perform an illegal act by requiring it to pay back pay in contravention of the provisions of Section 2167(b) of the MPETL. Section 2167(b) of the MPETL provides, in pertinent part:

> Any person hired as a police officer shall be ineligible to receive any salary, compensation or other consideration *for the performance of duties as a police officer* unless the person has met all of the requirements as established by the commission and has been duly certified as having met those requirements by the commission.

back pay or the trial court rejected such an argument. Moreover, following the trial court's affirmance of the 2009 award, the City appealed to this Court but withdrew the appeal on or about October 1, 2010. Prior to withdrawing the appeal, the City, by letter dated August 23, 2010, expressed no concerns to Grievant regarding any potential illegality of the 2009 award. In fact, in the letter, the City acknowledged that Grievant was no longer certified by the Commission and that he would have to be recertified before he could resume the duties of an officer. Nevertheless, the City stated that it would provide "a calculation of back pay" from which it would deduct "the amount of health insurance and premium copays which [Grievant] has not remitted to the City since 2008." (R.R. at 47a.) The City did not represent that payment of back pay must be limited to periods during which Grievant was certified. Moreover, the City represented that it would pay for time spent on re-certification activities. Thus, the City's newly asserted argument that it cannot pay Grievant as directed by the Supplemental Award because it would require the City to engage in an illegal act appears to be disingenuous, if not waived. Regardless, as Grievant does not argue that the City waived the issue of illegality and because some circumstances have changed since the issuance of the trial court's order affirming the 2009 award, we will address the City's argument.

(Emphasis added.) The City appears to argue that Section 2167(b), which prohibits uncertified police officers from being paid "for the performance duties of a police officer," also prohibits an arbitrator (or court for that matter) from awarding damages in the form of back pay to an officer who is presently not certified by the Commission. The City fails to recognize, however, that payment of an award of back pay is not the same as payment "for the performance of duties as a police office." *See* Section 2167(b) of the MPETL. Here, the Arbitrator awarded Grievant back pay to compensate him for *damages* arising as a result of the City's improper termination of his employment—not "for the performance of duties as a police officer."[6] The City, itself, prevented Grievant from performing police duties when it improperly discharged him from employment. Moreover, if we were to interpret Section 2167(b) of the MPETL as prohibiting an award of back pay to an individual whose certification lapses during the grievance process, we would effectively limit the type of relief that an arbitrator may award under Act 111. Section 2167(b) of the MPETL has never been interpreted to impose limits on the relief available under Act 111, and we decline to do so today, given that the language of Section 2167(b) is clearly limited to prohibiting a police officer from receiving "salary, compensation or other consideration *for the performance of duties as a police officer*" and does not in any manner address damages that may be awarded through arbitration.[7] Thus, we reject the City's argument that the arbitrator's award of back pay would require the City to perform an illegal act. We agree with Grievant that, because the Arbitrator determined that the City failed to make a valid offer of reinstatement to Grievant, the Arbitrator did not exceed his authority by concluding that the City continued to remain liable to Grievant for back pay. It follows, then, that the trial court correctly concluded that back pay continues to accrue, because Grievant is entitled to back pay for the period of time from the termination of his one-year suspension until he is reinstated or formally determined to be ineligible for certification.

■ Finally, we must disagree with the City's argument that the Arbitrator overturned the Commission's decision by directing the City to reinstate Grievant.

6. In *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Keyes)*, 54 A.3d 129 (Pa.Cmwlth.2012), this Court held that an award of back pay, generally, is within the realm of matters that may be addressed by an arbitrator under Act 111, because back pay is a form of compensation that relates to the terms and conditions of employment. *Keyes*, 54 A.3d at 133. We note that back pay is generally awarded as damages against an employer for periods of time where the employee is not working—*i.e.*, not performing duties for the employer—because the employer improperly suspended or terminated the employee's employment. Hence, an arbitrator's award of "back pay" to any officer, whether the officer is certified or not, would necessarily fall outside the prohibition of Section 2167(b) of the MPETL, because, in both cases, the officer is not being compensated "for the performance of duties as a police officer." *See* Section 2167(b) of the MPETL. Rather, he is receiving damages as a result of the improper actions of his employer.

7. We also note that had the City not improperly terminated Grievant's employment, Grievant would not have been in a situation where his certification lapsed. Furthermore, as the Arbitrator found, had the City reinstated Grievant following the 2009 award or taken steps to allow him to maintain his certification pending reinstatement, his certification also would not have lapsed. Thus, it is because of the City's improper firing of Grievant and resistance to reinstate him following the 2009 award that Grievant's certification lapsed. The City should not be permitted to benefit financially from its improper termination and subsequent delay.

Specifically, the City contends that the Commission found Grievant to be ineligible for recertification. As discussed above, however, the Commission's decision did not constitute a final adjudication on Grievant's eligibility to be recertified as a police officer. Thus, the Arbitrator did not overturn the Commission's decision or exceed his jurisdiction.

For the reasons set forth, the trial court did not err in concluding that the Arbitrator did not exceed his jurisdiction or authority or usurp the statutory and regulatory role of the Commission, where the Arbitrator merely ordered the City to comply with the 2009 award and there was no formal action by the Commission denying Grievant's application for certification. The trial court, therefore, did not err in

affirming the Supplemental Award reinstating Grievant and ordering back pay.

Accordingly, we affirm the order of the trial court.

Judge McCULLOUGH dissents.

### ORDER

AND NOW, this 18th day of September, 2013, the order of the Court of Common Pleas of Beaver County is hereby AFFIRMED.