**FRATERNAL ORDER OF POLICE LODGE NO. 19, Appellant,**

v.

**CITY OF CHESTER.**

Commonwealth Court of Pennsylvania.

Argued March 1, 2004.
Decided March 23, 2004.

Steven J. Holroyd, Jr., Philadelphia, for appellant.

Michael L. Maddren, Media, for appellee.

BEFORE: COLINS, President Judge, and COHN, J. (P.), and MIRARCHI, JR., Senior Judge.

OPINION BY President Judge COLINS.

The Fraternal Order of Police Lodge 19 (Lodge 19) appeals the order of the Court of Common Pleas of Delaware County in which it vacated a grievance arbitration award that directed the City of Chester (City) to fill vacancies in the rank of captain.

Lodge 19 and the City were parties to a collective bargaining agreement (CBA) that was effective from January 1, 1998 through December 31, 2002. In March 2002, Sergeant Thomas Bright filed a grievance in the matter of the City's failure to test for the rank of captain when it tested for the ranks of corporal and sergeant.

This case arose in the context of the following background. In 1992 the City's police department had six captains; five retired in 1992, and the sixth was promot-

ed in 1994. Since then, the City has not promoted anyone to the rank of captain. Command duties, at one time performed by captains, apparently fell to sergeants. Since 1992 no sergeant has sought to become a captain, and no one filed a grievance in connection with the City's failure to promote to the rank of captain. Before the effective date of the CBA, the City was declared to be a financially distressed municipality, and it adopted a recovery plan in February 1996 in compliance with the Municipalities Financial Recovery Act (Act 47),[1] 53 P.S. §§ 11701.101–11701.501.

CBA Article VIII, Wages, Section 3, Rank Differential, provides that the rank of captain shall have a differential of 6 percent above the base wage of a sergeant. Article VII, Promotion Policy and Seniority, Section 1, adopts and incorporates a May 31, 1978 City resolution (appendix I of the CBA), which states that promotions "shall be based on merit to be ascertained by examinations to be prescribed by the Mayor and Council." Article XXVII, Acting in Rank, provides:

1. No promotional position may be filled by the temporary assignment of a police Officer "acting in rank" for more than ninety (90) days. Beyond the ninety (90) day period, the position must be filled by competitive civil service examination, provided that a passing grade is obtained with respect to the examination.

2. A Police Officer acting in the rank of a higher paid Police Officer shall not be paid at the higher rank.

Based on the terms of the CBA and the uncontradicted testimony of Sergeant Bright that since 1992 captains had been performing command duties, the arbitrator concluded that the City had enjoyed the benefit of having sergeants act in the rank of captain without paying those officers the rank differential, and to remedy this violation, directed the City to offer a competitive examination for the rank of captain and to promote those who are eligible and who obtain a passing grade to serve as shift commanders. The arbitrator also directed the City to make whole those sergeants who served as shift commanders by paying them the rank differential from the date the grievance was filed until the date when captains are appointed.

Addressing the City's contention that Act 47 and the City's recovery plan preclude an award that requires the City to fill the rank of captain, the arbitrator concluded that the CBA did not impose new or additional restrictions on management rights, including the right to promote and to eliminate and redefine positions in accordance with the City's needs, because the CBA provisions in question were carried over unchanged from earlier agreements. The arbitrator also disputed the City's projected cost of promoting sergeants to the rank of captain, characterizing the additional cost as relatively small even in a City in dire financial condition, and volunteered that the City could make other adjustments to make up for the additional cost without violating the terms of the CBA.

The City filed a petition to vacate the arbitrator's award with the court of common pleas. Mindful of the limited nature of its review, the trial court concluded that the arbitrator exceeded his authority when he directed the City to offer an examination for the rank of captain, an issue that the trial judge found to be outside the terms and conditions of employment. The judge noted that CBA did not expressly mandate testing to fill the rank and that it did not involve an issue of compensation,

---

1. Act of July 10, 1987, P.L. 246, *as amended.*

hours, working conditions, retirement, pension, or other benefits. The trial court did not address the Act 47 issue.

■ Grievance arbitration occurs when the parties disagree as to the interpretation of an existing collective bargaining agreement. *Penna. State Police v. Penna. State Troopers' Ass'n,* 559 Pa. 586, 741 A.2d 1248 (1999) (citing *Penna. State Police v. Penna. State Troopers' Ass'n (Betancourt),* 540 Pa. 66, 656 A.2d 83 (1995)). Our review in Act 111 grievance arbitration cases is narrow, such that our inquiry is limited to questions concerning: 1) the jurisdiction of the arbitrator; 2) the regularity of the proceedings; 3) an excess of the arbitrator's powers; and 4) the deprivation of constitutional rights. *Id.*

■ The trial court in this case concluded that the arbitrator exceeded his powers. An arbitrator exceeds his powers when he mandates an illegal act (i.e., he may require the employer to do only that which the employer could·do voluntarily) or when the award goes beyond the terms and conditions of employment. *Id.* A mere error of law will not support a court's decision to reverse an Act 111 arbitrator's award. *Id.* Because the City could voluntarily hold examinations for promotion, promote sergeants according to the qualifications for the rank of captain, and pay the rank differential to sergeants who performed command duties, the arbitrator did not direct the City to perform an illegal act, and the award is not unrelated to the terms and conditions of employment. Accordingly, we must conclude that the arbitrator did not exceed his powers in this case. Our inquiry, however, does not end with this conclusion.

■ An arbitrator may be in excess of his powers if he requires a public employer to perform an act that is prohibited by

law or causes the employer to be in violation of another law. *Bristol Borough v. Bristol Borough Police Benevolent Ass'n,* 815 A.2d 662 (Pa.Cmwlth.2003). In *Bristol Borough,* we reversed the trial court's affirmance of an arbitration award for the reason that the award contravened the Municipal Pension Plan Funding Standard and Recovery Act.[2] In the present case, the City argues that the arbitrator's award is precluded by Act 47 and its recovery plan. In *City of Farrell v. Fraternal Order of Police Lodge 34,* 538 Pa. 75, 645 A.2d 1294 (1994), the Supreme Court recognized the interrelationship between Act 111 and Act 47, two primary legislative acts, and the trial court's authority to determine whether a grievance arbitration award is precluded by the recommendations in a financially distressed municipality's recovery plan.

As we stated above, the City was declared a financially distressed municipality in April of 1995, and it implemented a recovery plan in April 1996 pursuant to Section 247 of Act 47, 53 P.S. § 11701.247, before the effective date of the CBA. The failure of a distressed municipality to follow a recommendation made by the recovery plan coordinator will result in the loss of funding from the Commonwealth. Section 264 of Act 47, 53 P.S. § 11701.264. Section 252 of Act 47 provides: "A collective bargaining agreement or arbitration settlement executed after the adoption of a plan shall not in any manner violate, expand or diminish its provisions." 53 P.S. § 11701.252.

Although the arbitrator concluded that the CBA did not impose new or additional restrictions on management rights because the CBA provisions in question were carried over unchanged from earlier agreements, Chapter V of the City's recovery

**2.** Act of December 18, 1984, P.L. 1005, *as amended,* 53 P.S. §§ 895.101—895.802.

plan, which addresses collective bargaining issues, concludes, inter alia,

> [t]he timing, duration and effect of the last interest arbitration award is unfortunate because it commits the City to continuing an upward spiral of personnel costs that already place an unreasonable and unnecessarily high burden on the City's fiscal resources.
>
> . . . .
>
> It is quite obvious that the City does not have the resources to maintain its existing complement of municipal law enforcement personnel, much less to expand its staff of police officers. . . .
>
> . . . .
>
> With respect to 1998 (and any subsequent period while this Plan remains in effect), the Coordinator makes the Recommendations set out below, which will become binding if this Recovery Plan is adopted. . . .

The recovery plan then sets forth nine recommendations. Recommendation number 1 provides that any labor agreement entered into after the effective date of the plan may not contain, require, or provide for any new or additional restrictions on the City's management rights, and may not include any provision that restricts or impairs the City's ability to effect a reduction in workforce. Recommendation number 2 places caps on the total average cost per police employee. The plan defines "management rights" as including, without limitation, the rights to promulgate and enforce work rules, policies, and procedures; select, hire, promote, transfer, assign, and determine the duties of employees; establish, eliminate, and redefine positions in accordance with the City's needs; create, abolish, and change jobs and job duties; and determine whether a job vacancy exists; among other enumerated rights. These recovery plan recommendations would seem to

counter the arbitrator's conclusion that based on their inclusion in earlier agreements the CBA provisions on which he relied in fashioning his award did not create new or additional restrictions on management rights as defined in the recovery plan coordinator's recommendations.

Because the trial court did not address the Act 47 issues raised in the City's petition to vacate arbitrator's award, we reverse the trial court's order and remand for a determination of whether the arbitrator's award substituted the discretion of the arbitrator for that of the City's elected officials, or in the terms of Act 47, whether the award in any manner violated, expanded, or diminished the provisions of the recovery plan. *See City of Farrell.*

### ORDER

AND NOW, this 23rd day of March 2004, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is reversed, and this matter is remanded for further proceedings in accordance with this opinion.

Jurisdiction is relinquished.