**Town of McCANDLESS**

v.

**McCANDLESS POLICE OFFICERS ASSOCIATION, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 11, 2008.
Decided June 18, 2008.

Eric C. Stoltenberg, Pittsburgh, for appellant.

Shon K. Worner, Pittsburgh, for appellee.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, LEAVITT, Judge.

OPINION * BY Judge LEAVITT.

The McCandless Police Officers Association (Association) appeals an order of the Court of Common Pleas of Allegheny County (trial court) vacating an arbitration award issued against the Town of McCandless (the Town). The trial court held that the arbitrator lacked jurisdiction to hear the grievance filed by the Association or the power to order the Town to schedule all police officers to one set shift per month, without deviation, regardless of manpower needs in a given week. Concluding that an adjustment to one officer's schedule, which was necessitated by another officer's unexpected military obligation, is the exercise of management prerogative not subject to mandatory bargaining, we affirm.

The facts, as found by the arbitrator, are as follows. The Town and the Association entered into a collective bargaining agreement (CBA) for the period between January 1, 2000, and December 31, 2003. The CBA governed, *inter alia*, system-wide shift assignments. Generally, police officers are scheduled to work in four-week blocks on one of three possible shifts: the day shift, 7:00 a.m. to 3:00 p.m.; the swing shift, 3:00 p.m. to 11:00 p.m.; and the night shift, 11:00 p.m. to 7:00 a.m. In accordance with Article V of the CBA, the Chief of Police posts shift assignments for each officer four weeks in advance of their effective date.[1] Each officer is assigned to one

---

* This opinion is filed in accordance with Section 256(b) of the Internal Operating Procedures of the Commonwealth Court, 210 Pa. Code § 67.29(b).

1. Article V of the CBA provides:

(a) Shift assignments for each month or four (4) week period shall be posted on the first day of the previous schedule or for an eight week period. Once posted, the Town will not change shift assignments except as follows:

of three platoons, and all members of a platoon rotate through the shifts together. However, where necessary, a particular officer will be moved from the night shift to the swing shift, and this has been done by the Town on occasion since 1997.

The schedule for August 5, 2001, through September 1, 2001, assigned Officer Franceschina to work the day shift for the first two weeks and the swing shift for the second two weeks. This was done to accommodate another officer's military leave of absence.[2] Officer Franceschina voiced no objection to his split schedule. Nevertheless, the Association filed a grievance asserting that split shift assignments violated several provisions of the CBA. Specifically, the Association contended that it was past practice of management to assign officers to one shift for an entire four-week period. In its grievance, the Association sought the following relief:

> It is requested that all Uniform Patrol Officers' shift assignments be consistent for the entire scheduling period, in that only one shift is scheduled for a(28) twenty-eight day period. Excepted would be a split schedule that occurs as a consequence of an officer entering into

a mutually agreed to switch with another officer.

R.R. at 60a.

A hearing was conducted on the Association's grievance by Arbitrator Phillip W. Parkinson. At the hearing, it was established that Officer Franceschina was the only officer directly affected by the split schedule and that he did not object to it. It was further established that there were four prior incidents, between July 1987 and May 2001, where the Town scheduled officers to split schedules where necessary to meet unusual manpower needs.[3] The arbitrator found that there was a past practice of scheduling patrol officers to one shift for each twenty-eight day period. Because past practices had been incorporated into the CBA by Article XXXV,[4] the Arbitrator found the Town in violation of this provision of the CBA. He entered the following award:

> The Employer is directed to abide by the parties' established past practice of scheduling non-probationary Patrol Officers to one shift per month in accordance with other members of the assigned platoon.

R.R. at 83a.[5]

---

(1) In case of serious emergency;
(2) by mutual consent of two Police Patrol Officers involved in the exchange of their respective shift assignments with the prior knowledge and approval of the Chief of Police or his designate;
(3) to accommodate holiday passes; and
(4) to accommodate schooling.
Reproduced Record at 18 (R.R. ____). Article V is silent on split shifts, *i.e.*, dividing an officer's schedule between two shifts within a four-week period.

2. After the posting, the officers requested and were granted a voluntary switch for weeks three and four and, thus, the officers worked the same shift for the entire period at issue. This voluntary change was not the subject of the underlying grievance.

3. In its defense, the Town submitted approximately twenty work schedules from July 1987

through May 2001, demonstrating that officers had been scheduled to split shifts during the four-week scheduling periods. However, the arbitrator concluded that only four of the cited swing shifts were assigned to non-probationary patrol officers with the remainder being assigned to sergeants and probationary patrol officers. The arbitrator found that the grievance only pertained to non-probationary patrol officers and, therefore, concluded that only the four cited incidents were relevant to the determination of past practice.

4. Article XXXV of the CBA provides:

> All existing past policies and practices not specifically abrogated herein shall continue with full force and effect as though fully set forth herein.
> R.R. at 54a.

The Town petitioned to vacate the arbitration award. The Town argued that the arbitrator lacked jurisdiction to hear the grievance and did not have the power to issue his award. The Town asserted that the scheduling of Officer Franceschina was a managerial prerogative not subject to mandatory bargaining. The trial court agreed and vacated the award. The trial court found that the scheduling of Officer Franceschina did not affect the system of monthly scheduling as a whole; was done for the benefit of the public; and had a minimal impact on an employee interest. The trial court concluded that past practice was irrelevant because the Town was exercising its managerial prerogative. The Association's appeal followed.[6]

On appeal, the Association raises one issue for this Court's review, i.e., that the arbitrator had jurisdiction over the Association's grievance and the power to enter its award. The Association argues that this case concerns a unilateral implementation of a system-wide change in scheduling, which violated the Town's established past practice of assigning officers to one shift for any four-week period. The Association contends that fixed assignments for a four-week period is a mandatory subject of bargaining and, therefore, not a managerial prerogative.

■■■ An arbitrator exceeds his powers when he orders an illegal act or when his award goes beyond the terms and conditions of employment governed by Act 111. *Fraternal Order of Police Lodge No.19 v. City of Chester,* 845 A.2d 230, 233 (Pa. Cmwlth.2004). Although an arbitrator may not order a public employer to perform any act that violates the law, an arbitrator's mere error of law is not enough to allow a court to vacate an Act 111 arbitration award. *Id.* An arbitrator exceeds his jurisdiction when he addresses issues not properly submitted to him in accordance with Section 1 of Act 111.[7]

**5.** The Association also alleged a violation of Article XXXVI of the CBA, which prohibits preferential or discriminatory treatment. The arbitrator found that the Town was merely attempting to accommodate the department's scheduling needs and, therefore, the Town's actions did not violate Article XXXVI of the CBA.

**6.** Judicial review of an arbitration award arising under what is commonly referred to as Act 111, Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10, is in the nature of narrow *certiorari*. Under this standard, a review in court is limited to questions regarding: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceeding; (3) an excess of the arbitrator's powers; and (4) the deprivation of constitutional rights. *City of Philadelphia v. Fraternal Order of Police Lodge No.5 (Jason Breary ),* 932 A.2d 274, 278 n. 6 (Pa.Cmwlth.2007). The standard of review to be applied is two-fold. A court's review is a plenary, non-deferential standard where the resolution of the issues turns on a question of law or application of law to undisputed facts. *Id.* However, where the question

depends on fact-finding or upon interpretation of the collective bargaining agreement, the court is bound by the arbitrator's determination even if the arbitrator is wrong. *Id.*

**7.** Section 1 of Act 111 provides, in pertinent part, as follows:

Police or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall ... have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this Act.

43 P.S. § 217.1. In *South Park Township Police Association v. Pennsylvania Labor Relations Board,* 789 A.2d 874, 878 (Pa.Cmwlth. 2002), we held that requiring officers to return to their shift after completing a work-related court appearance was a managerial prerogative not subject to collective bargaining. On the other hand, an issue is bargaina-

*Pennsylvania State Police v. Pennsylvania State Troopers Association,* 840 A.2d 1059, 1064 (Pa.Cmwlth.2004).

■ Here, the trial court found that the arbitrator lacked jurisdiction over the grievance and exceeded his authority in fashioning his award. Evidence of a past practice can be used to prove a condition of employment that cannot be derived from the express language of the collective bargaining agreement. *Ellwood City Police Wage and Policy Unit v. Pennsylvania Labor Relations Board,* 731 A.2d 670, 672 (Pa.Cmwlth.1999). However, as this Court explained in *South Park Township Police Association v. Pennsylvania Labor Relations Board,* 789 A.2d 874, 879 (Pa. Cmwlth.2002), if the past practice in question is not a subject of mandatory bargaining, then it is irrelevant. Stated otherwise, a managerial prerogative cannot be abridged by a past practice.

It is well settled that a municipality decides the extent to which it will provide police coverage and services and that such decisions fall within the municipality's managerial prerogative. *City of Jeannette v. Pennsylvania Labor Relations Board,* 890 A.2d 1154, 1160 (Pa.Cmwlth.2006). On the other hand, implementation of a system-wide change in officer scheduling is a subject of mandatory bargaining. *Township of Upper Saucon v. Pennsylvania*

*Labor Relations Board,* 152 Pa.Cmwlth. 530, 620 A.2d 71, 75 (1993).

■ In *Upper Saucon,* the township switched all its police officers from a system of rotating shift schedules to a steady shift schedule. It did so unilaterally without negotiating with the police officers' bargaining unit. We affirmed the holding of the Pennsylvania Labor Relations Board that a unilateral change in a unit-wide scheduling system constituted an unfair labor practice. Stated otherwise, the issue of scheduling for the entire bargaining unit is subject to mandatory bargaining under Section 1 of Act 111.

■ This case is unlike *Upper Saucon.* The Town did not unilaterally impose a system-wide change in scheduling its police officers. The purpose of assigning Officer Franceschina to a split schedule was done on an *ad hoc,* singular basis to accommodate another officer's absence caused by that officer's military obligation. It was done to insure police coverage notwithstanding that officer's military leave and, as such, was not a subject of mandatory bargaining. This Court has held that Act 111 does not divest a municipality of the prerogative to make any decision "essential for the proper and efficient functioning of a police force." *Plumstead Township v. Pennsylvania Labor Relations Board,* 713 A.2d 730, 733 (Pa.

ble if it bears a rational relationship to the employee's duties. *Plumstead Township v. Pennsylvania Labor Relations Board,* 713 A.2d 730, 733 (Pa.Cmwlth.1998).

The rational relationship test under Act 111 is similar to the balancing test in cases dealing with the Public Employee Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.1010–1101.2301, as set forth in *Pennsylvania Labor Relations Board v. State College Area School District,* 461 Pa. 494, 507, 337 A.2d 262, 268 (1975) (a matter is bargainable if "the impact of the issue on the interest of the employee in wages, hours and terms and conditions of employment outweighs its

probable effect on the basic policy of the system as a whole."). *Indiana Borough v. Pennsylvania Labor Relations Board,* 695 A.2d 470, 474 (Pa.Cmwlth.1997). However, where a managerial policy concern substantially outweighs any impact the issue will have on employees, the issue will be deemed a managerial prerogative and, thus, not bargainable. *Id. See also Frackville Borough Police Department v. Pennsylvania Labor Relations Board,* 701 A.2d 632, 634 (Pa.Cmwlth.1997) (a subject may be a managerial prerogative which need not be bargained, even though it may affect employee wages, hours, or working conditions.)

Cmwlth.1998). As this Court has explained:

> *Unlike private sector employers, public employers are ultimately responsible for the health, safety, and welfare of our communities.* Due to their unique nature and role, public employers must be able to perform the functions they are charged to carry out by the citizenry. Consistent with this status, our Court has recognized that public employers cannot be compelled in arbitration to relinquish powers that are essential to the proper discharge of their functions.

*Allegheny County Airport Authority v. Construction General Laborers and Material Handlers Union,* 874 A.2d 1250, 1255–1256 (Pa.Cmwlth.2005). An arbitrator cannot interpret a collective bargaining agreement in a way to deprive the public employer of its ability to discharge its essential function as a public enterprise. ■ The decision to assign Officer Franceschina to a split schedule did not effect a system-wide change in scheduling. The Town exercised its managerial prerogative to "perform the functions" required to carry out its responsibility "for the health, safety, and welfare" of the Town. *Id.* The arbitrator exceeded his authority by looking at the Town's past practice of scheduling officers to one shift per month. It was irrelevant where, as here, the Town faced an exigency caused by an officer's military leave.[8] The Town's action was the exercise of its managerial prerogative and beyond mandatory bargaining.

For these reasons, we affirm the trial court.

### ORDER

AND NOW, this 18th day of June, 2008, the order of the Court of Common Pleas of Allegheny County, dated August 22, 2007, in the above-captioned matter is hereby AFFIRMED in accordance with this opinion.

### DISSENTING OPINION BY Judge McGINLEY.

I respectfully dissent to the majority's conclusion that the arbitrator lacked jurisdiction over the grievance and exceeded his authority in fashioning the award, although this is truly a tempest in a teapot.

The majority concludes that the decision to schedule split shift assignments was a managerial prerogative and beyond mandatory bargaining. I disagree. I further disagree with the majority's conclusion that *Township of Upper Saucon v. Pennsylvania Labor Relations Board,* 152 Pa. Cmwlth. 530, 620 A.2d 71 (1993) is inapplicable to the present controversy. In *Upper Saucon,* this Court determined that a shift system change was a mandatory subject of bargaining under Act 111. Here, the Town of McCandless changed the shift assignment of an officer from a four week block to two blocks of two weeks. I believe this change was subject to mandatory bargaining under the CBA.

Second, the majority states that past practice is inapplicable if the past practice in question is not a subject of mandatory bargaining. *See South Park Township Police Association v. Pennsylvania Labor Relations Board,* 789 A.2d 874 (Pa. Cmwlth.2002). Because I believe the shift assignment is a mandatory subject of bargaining, I do not believe the arbitrator exceeded his authority in fashioning the award by looking at past practice.

---

**8.** Indeed, to the extent past practice is relevant, it supports the Town's position. The evidence showed that deviations from the paradigm of one shift per month were done by the Town to adjust to exigent circumstances.

The arbitrator did not order an illegal act or issue an award that went beyond the terms and conditions of employment governed by Act 111. *See Fraternal Order of Police Lodge No. 19 v. City of Chester,* 845 A.2d 230 (Pa.Cmwlth.2004). The arbitrator did not exceed his jurisdiction because the provision of scheduling is a mandatory subject of bargaining and was contained in the CBA.

Accordingly, I would reverse the order of the common pleas court and reinstate the decision of the arbitrator.