**PENNSYLVANIA STATE POLICE, Petitioner**

v.

**PENNSYLVANIA STATE TROOPERS' ASSOCIATION (Trooper Michael Keyes), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2012.

Decided Oct. 2, 2012.

---

Joanna N. Reynolds, Assistant Counsel, Harrisburg, for petitioner.

Ian J. Blynn, Harrisburg, for respondents.

BEFORE: PELLEGRINI, President Judge, and COHN JUBELIRER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY President Judge PELLEGRINI.

The Pennsylvania State Police (PSP) appeals from a decision of an arbitrator directing it to pay Trooper Michael Keyes (Keyes) $15,810.08, which it deducted from a back pay arbitration award to offset Keyes' earned income from another employer. Finding no error, we affirm.

Keyes was removed from duty on February 9, 2007, following a number of suicide attempts, one of which resulted in Keyes' involuntary commitment. A grievance was filed on his behalf by the Pennsylvania State Troopers' Association (Association) challenging his removal from duty, and after it was denied, an arbitrator ordered that Keyes be returned to limited duty on October 20, 2008 without back pay. PSP appealed to this Court, which upheld the arbitrator's award; a subsequent application for appeal was denied by the Supreme Court of Pennsylvania. While these appeals were under consideration, PSP did not allow Keyes to return to work.

On July 9, 2010, PSP placed Keyes back on the payroll and compensated him for back pay but withheld $15,810.08, which he earned as a bus driver in supplementary employment that was approved after he was placed on suspension, during the time the appeals from the arbitration award were being considered. The Association filed another grievance seeking full compensation for back pay. The Commonwealth of Pennsylvania, Office of Administration (Commonwealth) sent the Association a letter stating that it viewed the issue as non-arbitrable because it was not encompassed by the collective bargaining agreement (Agreement) between PSP and the Association. The case proceeded to arbitration before Arbitrator William J. Miller, Jr. (Arbitrator), and, after he found that the offset for outside employment was arbitrable, the dispute went to arbitration on the merits.

The only provision of the Agreement that addresses the offsets issue is Article 26, Section 10 of the Agreement, which provides that "[a] member who has a previously approved request for supplementary employment, and is suspended without pay, may engage in the approved supplementary employment, and except as required by law, shall not be required to offset reimbursement if the member is found not guilty of all charges." (Reproduced Record [R.R.] at 67a.) Both parties agree that the provision was inapplicable because it dealt with disciplinary suspensions. However, each party put a different gloss on this provision.

The Association's position was that Article 26, Section 10 provides the only circumstance in which an offset was addressed. It argued that this provision means that the only time an offset is allowed is when a member who has been suspended for disciplinary reasons has off-duty employment and the supplementary employment has

been approved. It argued that all other circumstances are outside the contractual right and must be disallowed. The Commonwealth also agreed that this provision does not apply because it deals with disciplinary matters, but disagreed that it meant it was precluded from asserting offsets in other instances because there has been a past practice of allowing offsets in back pay awards.

Before the Arbitrator, to support its position· that there was a past practice, the Commonwealth called Matthew J. Ramble (Ramble), Chief of the Injury and Special Processing Division of the Bureau of Commonwealth Payroll Operations (Bureau) who testified that the Bureau's policy with regard to outside earnings is to deduct those earnings from a back pay award, and that policy has been in place since 1992, when the Bureau was formed. He said that since 2004, the Bureau has deducted outside earnings from back pay awards to eight Association employees, including Keyes. Ramble further testified that the policy is in place because back pay awards serve to "make an employee whole, and . . . allowing an employee to keep earnings that they earned because they were not working for the Commonwealth would be making the employee more than whole." (R.R. at 270a.) He also said it did not matter whether the award was disciplinary. It offered into evidence eight cases spread over eight years, which it contended that were all the cases involving back pay. The Union stated that those cases do not show a past practice because all of those cases, except one, involved a trooper on disciplinary suspension.

Agreeing with the parties that Article 26, Section 10 of the Agreement does not apply, the Arbitrator went on to find that the past practice of offsetting interim salaries had not been established because all instances that established the alleged past practice involved disciplinary matters, except one, which fell under Article 26, Section 10 of the Agreement. Moreover, the Arbitrator pointed out that there was no evidence to show that PSP and the Association mutually accepted the manner in which offsets in non-disciplinary matters would be handled. Because no contractual provision or past practice addressed this issue, the Arbitrator determined that the earlier arbitration award, which reinstated Keyes to limited duty, intended to reinstate him immediately at the time of the award and Keyes was not actually reinstated until PSP exhausted its legal remedies. Because the award was to be implemented immediately, the Arbitrator found that the offset on Keyes' back pay award was not authorized by the Agreement or established past practice, and he ordered PSP to pay Keyes $15,810.08 as reimbursement for the improper offset. This appeal followed.

■ PSP argues that the Arbitrator exceeded his jurisdiction in determining that PSP could not offset Keyes' interim earnings because the only portion of the Agreement which dealt with offsets did not apply here. Because there was no provision of the Agreement that applied, it contends the Arbitrator should have ruled in favor of the Commonwealth, particularly where it established that there was a past practice of allowing offsets for earned salary from the back pay awards.

■ Appeals of grievance arbitration awards under Act 111 [1] are reviewed under a narrow certiorari standard. *Pennsylvania State Police v. Pennsylvania State*

1. Police and Firemen Collective Bargaining Act, Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

*Troopers' Association (Betancourt)*, 540 Pa. 66, 656 A.2d 83 (1995). Narrow certiorari permits inquiry only into the following four aspects of an Act 111 arbitrator's award: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; or (4) deprivation of constitutional rights. PSP is not contending that the proceedings are irregular or that any constitutional rights have been violated. The only prong of the test that it squarely raises involves the jurisdiction of the Arbitrator, but it also tangentially seems to suggest the Arbitrator exceeded his powers in ordering no offset.

Regarding jurisdiction of the Arbitrator, we have held that an arbitrator exceeds his jurisdiction only when he addresses issues not submitted to him. *Pennsylvania State Police v. Pennsylvania State Troopers Association*, 840 A.2d 1059 (Pa.Cmwlth.2004). Here, the propriety of PSP's offset was submitted to the Arbitrator for resolution and was necessarily within his jurisdiction to decide.

■■■ As to whether he exceeded his powers, what constitutes an excess of an arbitrator's powers is far from expansive. An arbitrator may not mandate that an illegal act be carried out; he or she may only require a public employer to do that which the employer could do voluntarily. *Pennsylvania State Police v. Pennsylvania State Troopers Association (Smith)*, 559 Pa. 586, 741 A.2d 1248 (1999) (citing *Betancourt*, 540 Pa. at 78, 656 A.2d at 90). Furthermore, the award must encompass only terms and conditions of employment and may not address issues outside of that realm. *City of Philadelphia v. International Association of Firefighters, Local 22*, 606 Pa. 447, 999 A.2d 555 (2010). Essentially, if the acts an arbitrator mandates the employer to perform are legal and relate to the terms and conditions of

employment, then the arbitrator did not exceed his or her authority. *Commonwealth v. Pennsylvania State Troopers Association*, 611 Pa. 56, 23 A.3d 966 (2011). An error of law alone will not support a finding that an arbitrator exceeded his or her powers. *Id.*

In determining whether an arbitrator's award bears a rational relationship to the terms or conditions of employment, Section 1 of Act 111 provides that terms and conditions of employment include "compensation, hours, working conditions, retirement, pensions and other benefits." 43 P.S. § 217.1. Because back pay deals with compensation, the Arbitrator was within his powers in addressing the propriety of the award. Moreover, the award also does not implicate any managerial prerogatives, such as service standards, overall budget, or organizational structure. For example, an arbitrator may not infringe upon a city's decision-making process with regard to closing its fire stations; even though it relates to terms and conditions of employment, it is a managerial matter to be left to that city. *International Association of Firefighters*, 606 Pa. at 476–77, 999 A.2d at 572–73. However, because back pay and interim employment are not managerial issues, the Arbitrator did not exceed his powers when awarding back pay without the offset.

■■■ Finally, PSP argues when there is no provision of the Agreement that applies, it contends the Arbitrator should have allowed the offset, particularly where it established there was a past practice of allowing offsets for earned salary from the back pay awards. We disagree for several reasons. First, no past practice has been found. A past practice may be used to demonstrate a condition of employment that cannot be clearly derived from the language of the collective bargaining agreement. *Town of McCandless v.*

*McCandless Police Officers Association,* 952 A.2d 1193 (Pa.Cmwlth.2008). What PSP's argument ignores is that the Arbitrator found no past practice existed and under the narrow certiorari standard of review, the propriety of factual findings are not subject to any review, but are final. Second, its argument seems to suggest when there is any "gap" in the agreement, it means that PSP has the power to address the situation in any way it wants. While that argument echoes arguments made under the "essence test" used in grievance arbitration under the Pennsylvania Public Employe Relations Act,[2] under the narrow certiorari test, whether the award is of the essence of the agreement is irrelevant. Absent ordering an illegal act, as long as an award is within the arbitrator's jurisdiction, is not in excess of his or her powers, or is not unconstitutional, an arbitrator's award is not reviewable.

Accordingly, for the foregoing reason, we affirm the Arbitrator's decision.

### ORDER

AND NOW, this 2nd day of October, 2012, the order of Arbitrator William J. Miller, Jr., dated February 4, 2012, is affirmed.

---

**2.** Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.