IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh, Pennsylvania, : 
                            Appellant   : 
                                       : 
          v.                    : No.  535 C.D. 2023
                                       : Submitted: February 6, 2024
Fraternal Order of Police, Fort Pitt  : 
Lodge No. 1 (Aaron Fetty)        : 

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE STACY WALLACE, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                           FILED:  March 6, 2024

      Consistent with the Policemen and Firemen Collective Bargaining Act, Act of June 24, 1968, P.L. 237, No. 111, 43 P.S. §§ 217.1-217.12, commonly known as Act 111 (Act 111), the Fraternal Order of Police, Fort Pitt Lodge No. 1 (FOP), may file a grievance challenging disciplinary actions taken against a City of Pittsburgh (City) Bureau of Police (Bureau) officer. An arbitration panel then hears the grievance and issues a decision, after which "[n]o appeal therefrom shall be allowed to any court." Section 7(a) of Act 111, 43 P.S. § 217.7(a). Pennsylvania's Supreme Court permits a limited exception to Act 111's prohibition of appeals, known as "narrow certiorari" review. *Pa. State Police v. Pa. State Troopers Ass'n (Betancourt)*, 656 A.2d 83, 89 (Pa. 1995). Under narrow certiorari, this Court may not reverse an arbitration panel

because we disagree with its findings of fact or believe it misinterpreted the parties' collective bargaining agreement. Stated differently, if the panel's decision depends on factfinding or interpreting the collective bargaining agreement, "reviewing courts apply the extreme standard of deference applicable to Act 111 awards; . . . **they are bound by the arbitrator's determination of these matters even though [they] may find them to be incorrect**." *City of Pittsburgh v. Fraternal Ord. of Police Fort Pitt Lodge No. 1*, 304 A.3d 816, 823 n.4 (Pa. Cmwlth. 2023) (citing *Pa. State Police v. Pa. State Troopers Ass'n*, 840 A.2d 1059 (Pa. Cmwlth. 2004)) (emphasis added).

The matter on appeal involves Bureau police officer Aaron Fetty (Fetty). The City terminated Fetty's employment after the Court of Common Pleas of Allegheny County (Common Pleas) issued a final sexual violence protective order (protective order), dated March 23, 2022, finding he "[a]t a minimum, . . . committed the act of sexual assault" against a fellow officer (Coworker) on June 19, 2021. Reproduced Record (R.R.) at 341a. The FOP filed a grievance, which an arbitration panel (Panel) granted. The Panel directed the City to reinstate Fetty, concluding the City failed to bring its disciplinary action within 120 days of the infraction, as required under the Working Agreement (Agreement) between the City and the FOP. The City appealed to Common Pleas,[1] which affirmed by order dated April 20, 2023. The City now appeals to this Court. Mindful of our narrow certiorari review, we affirm.

## I. Background

The Panel did not make findings of fact in support of its decision. Therefore, we glean the facts underlying this appeal from the record. On June 19, 2021, a group of Bureau police officers held a cookout at the end of their shift, at which alcohol was served. Several of the officers, including Fetty and Coworker, then drove to a

---

[1] The Common Pleas judge who heard the City's appeal was not the same judge who issued the final protective order.

bar. Coworker became intoxicated while at the bar, and Fetty drove Coworker home. On June 28, 2021, the City's Office of Municipal Investigations (OMI) received an anonymous complaint, alleging Fetty committed indecent assault against Coworker after driving her home on June 19, 2021. OMI launched an investigation, as did the Allegheny County Police Department, but Fetty was not charged with a crime. The City issued Disciplinary Action Report 21-088 against Fetty, dated September 22, 2021. Fetty received a three-day suspension, five-year "Last Chance Agreement for sexual harassment," and counseling. R.R. at 351a. The City transferred Fetty away from Coworker, to a different "zone" within the Bureau.

On December 30, 2021, however, Coworker obtained a temporary protective order against Fetty and sent a mass e-mail to the Bureau, among others. Coworker's e-mail detailed her limited recollections and attempts to learn what happened on June 19, 2021; alleged Fetty "sexually assaulted [her] . . . while [she] was drifting in and out of consciousness"; and criticized the City's leniency toward Fetty. R.R. at 298a. Coworker obtained a final protective order on March 23, 2022, after a hearing before Common Pleas. As explained above, Common Pleas found Fetty "[a]t a minimum, . . . committed the act of sexual assault." *Id.* at 341a. The Allegheny County Police Department reopened its investigation but, once again, Fetty was not charged with a crime. The City issued Disciplinary Action Report 22-059 against Fetty, dated July 12, 2022. Acting Police Chief Thomas Stangrecki (Chief Stangrecki) recommended Fetty be suspended, but Public Safety Director Lee Schmidt (Schmidt) amended the recommendation to a five-day suspension pending termination. The FOP appealed, and Schmidt sustained his initial decision by letter dated September 21, 2022.

The FOP filed a grievance, and the matter proceeded to an arbitration hearing before the Panel on November 17, 2022. The City presented the testimony of Chief

3

Stangrecki, Schmidt, and OMI Manager Erin Bruni (Bruni). The FOP presented the testimony of Nicole Nino, Esquire, Detective Jeremy Hoerter, FOP President Robert Swartzwelder, and Fetty. Critically, the parties' arguments at the hearing addressed Section 19(II)(F) of the Agreement, which generally requires the City to bring a disciplinary action within 120 days (120-Day Rule):

> **Absent unusual circumstances, disciplinary action must ordinarily be taken against an officer within one hundred twenty (120) calendar days of an infraction, or within one hundred twenty (120) calendar days after the City should reasonably have known about the infraction.** If the City is claiming unusual circumstances which necessitate extending the time period beyond one hundred and twenty days (120) the FOP shall be notified in writing as soon as practical and not later than one hundred (100) days after the City knew or should have known of the infraction. The notice to the FOP shall set forth the City's unusual circumstances, in summary fashion, **such as instances involving ongoing criminal investigation**, unavailability of participants or witnesses due to military deployment, incapacity, or other circumstances. The FOP may request an update regarding the unusual circumstances every thirty (30) calendar days of the continuation of unusual circumstances. The City shall respond to the FOP's request for an update within seven (7) calendar days. **In the absence of unusual circumstances, the failure to abide by the one hundred twenty (120) day deadline shall preclude the issuance of discipline. The preceding language shall not apply in situations where OMI is conducting an ongoing investigation.** In such instance, the City shall issue the [disciplinary action report] within the later of 120 calendar days referenced above or twenty-five (25) calendar days from the issuance of the OMI report.

R.R. at 232a-33a (emphasis added). According to the FOP, the 120-Day Rule barred the City from disciplining Fetty a second time under Disciplinary Action Report 22-059, because the City knew of Fetty's infraction when OMI received the anonymous complaint on June 28, 2021, or when Coworker obtained her temporary protective order and sent an e-mail to the Bureau on December 30, 2021. *Id.* at 5a-6a; 134a-35a.

4

The Panel issued a decision dated November 28, 2022, granting the grievance, concluding the 120-Day Rule prohibited Fetty's termination, and directing the City to reinstate Fetty with lost wages, benefits, and seniority. The Panel found the City learned of the allegation against Fetty when OMI received the anonymous complaint on June 28, 2021, resulting in Disciplinary Action Report 21-088. R.R. at 356a. It found Disciplinary Action Report 22-059, which followed the March 23, 2022 final protective order, involved the same allegation and rule violations as before. *Id.* at 356a-57a. The Panel rejected the claim that the final protective order "was based on some new information the City lacked" in the initial disciplinary action. *Id.* at 357a. Further, it rejected the claim "that re-fitting the same facts into what are patently the same rule violations . . . allows the City to avoid the 120-[D]ay [Rule]."[2] *Id.*

The City appealed to Common Pleas, arguing the Panel exceeded its powers by reforming the Agreement. The City argued it did not learn the severity of Fetty's misconduct until December 30, 2021, after which OMI began a second investigation. When Common Pleas issued the final protective order, the Allegheny County Police Department reopened its investigation, and the City sent the FOP a letter informing it of the unusual circumstances.[3] Therefore, the City contended it disciplined Fetty

---

[2] One member of the Panel, Wendy Kobee, Esquire (Kobee), dissented. In relevant part, Kobee described the two sets of investigations and disciplinary actions as "materially different." R.R. at 358a. She argued the first investigation and disciplinary action involved an allegation of indecent assault, while the second involved an allegation of sexual assault based on different evidence. *Id.* Kobee contended the March 23, 2022 protective order was the first time the City reasonably knew Fetty sexually assaulted Coworker. *Id.*

[3] By letter dated July 1, 2022, the City informed the FOP of the March 23, 2022 final protective order and indicated unusual circumstances required an exception to the 120-Day Rule. The City defined the unusual circumstances as "the recent conclusion of the on-going criminal investigation (June 14th), some ambiguous information about that from the Allegheny County Police [Department] and the [District Attorney's O]ffice which required clarification (June 24th)[,] and our staff availability." R.R. at 342a.

in compliance with the Agreement, and the Panel disregarded the Agreement's terms by concluding otherwise. The City further challenged the Panel's decision on public policy grounds. The City acknowledged the decision in *Pennsylvania State Police v. Pennsylvania State Troopers Association* (*Smith*), 741 A.2d 1248, 1252-53 (Pa. 1999), where the Pennsylvania Supreme Court rejected the argument that an Act 111 arbitrator exceeds his or her powers by reaching a decision contrary to public policy. The City suggested *Smith* was wrongly decided and should be revisited.

By order dated April 20, 2023, Common Pleas affirmed the Panel's decision. The City filed a notice of appeal to this Court, and Common Pleas issued an opinion in response to the City's concise statement of errors complained of on appeal. In its opinion, Common Pleas characterized the City's appeal as a challenge to the Panel's interpretation of the Agreement. Common Pleas Op., 7/17/2023, at 4. It emphasized the Panel was entitled to "extreme deference" when interpreting the Agreement. *Id.* at 3-4 (citing *Pa. State Police*, 840 A.2d at 1062). Thus, Common Pleas reasoned, it was bound by the Panel's interpretation of the Agreement even if it believed that interpretation was incorrect. *Id.* Common Pleas briefly addressed the City's public policy concerns, explaining our Supreme Court rejected public policy as a basis for disturbing an Act 111 arbitration award in *Smith*. *Id.* at 4.

In this Court, the City presents the same issues it raised before Common Pleas. The City contends the Panel reformed the Agreement by failing to apply the unusual circumstances exception to the 120-Day Rule, and it questions our Supreme Court's holding in *Smith*, regarding public policy challenges to Act 111 arbitration decisions.

## II. Discussion

In its first issue, the City contends the Panel exceeded its powers by reforming the Agreement. City's Br. at 16-27. Under narrow certiorari review, this Court may

6

consider questions regarding "(1) the jurisdiction of the arbitrator; (2) the regularity of the proceeding; (3) an excess of the arbitrator's powers; and (4) the deprivation of constitutional rights." *City of Phila. v. Fraternal Ord. of Police, Lodge No. 5*, 181 A.3d 485, 489 (Pa. Cmwlth. 2018) (quoting *McCandless v. McCandless Police Officers Ass'n*, 952 A.2d 1193, 1196 n.6 (Pa. Cmwlth. 2008)) (emphasis omitted). If resolving an issue on appeal "turns on a question of law or application of law to undisputed facts" our review is plenary and non-deferential. *Id.* (emphasis omitted). If, however, an issue "depends on fact-finding or upon interpretation of the collective bargaining agreement, [this C]ourt is bound by the arbitrator's determination even if the arbitrator is wrong." *Id.*; *see also City of Pittsburgh*, 304 A.3d at 823 n.4.

Generally, an Act 111 arbitrator does not exceed his or her powers if the acts the arbitrator requires the employer to perform "are legal; are acts that the employer could do voluntarily; and relate to the terms and conditions of employment." *City of Pittsburgh v. Fraternal Ord. of Police Fort Pitt Lodge No. 1*, 111 A.3d 794, 800 (Pa. Cmwlth. 2015) (*en banc*) (citing *Pa. State Police v. Pa. State Troopers' Ass'n (Keyes)*, 54 A.3d 129, 133 (Pa. Cmwlth. 2012)). The arbitrator may not add terms to, or change the language in, the parties' collective bargaining agreement.[4] *City of Pittsburgh*, 304 A.3d at 824 (citing *Borough of Montoursville v. Montoursville Police Bargaining Unit*, 958 A.2d 1084 (Pa. Cmwlth. 2008)). Although an arbitrator may not "equitably reform" an agreement, our Supreme Court has described the task of distinguishing between reformation and interpretation as unmanageable "[a]bsent an indisputably overt instance of reformation." *City of Pittsburgh v. Fraternal Ord. of Police, Fort Pitt Lodge No. 1*, 224 A.3d 702, 714 (Pa. 2020) (citing *Smith*, 741 A.2d at 1252-53).

---

[4] We note the Agreement in this case states an arbitrator "shall not have the right to add to, subtract from, modify, or disregard any of the terms or provisions of the Agreement." R.R. at 160a.

Here, the City contends the Panel reformed the Agreement by failing to apply the unusual circumstances exception to the 120-Day Rule. City's Br. at 26-27. The City argues OMI began a second investigation after Coworker obtained a temporary protective order and e-mailed the Bureau on December 30, 2021, and the Allegheny County Police Department reopened its previous investigation after Common Pleas issued a final protective order on March 23, 2022, both of which should have tolled the 120-Day Rule if the Panel applied the exception as required. *Id.* at 22-26. The City contends it did not learn of the specific allegation that Fetty sexually assaulted Coworker until she obtained the temporary protective order and e-mailed the Bureau. *Id.* at 21-24. The City distinguishes the anonymous complaint it received on June 28, 2021, which alleged indecent assault, from Coworker's sexual assault allegation on December 30, 2021. *Id.* at 18-25.

We recently addressed a similar challenge in *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, ___ A.3d ___ (Pa. Cmwlth., No. 39 C.D. 2023, filed January 8, 2024) (*en banc*). That appeal involved a Philadelphia police officer who sent "highly inappropriate messages to two female officers under his supervision . . . including texts with sexually suggestive comments, innuendos, and sexual content, culminating in a graphic, disturbing video depicting bestiality between a woman and a dog." *Id.*, ___ A.3d at ___, slip op. at 2. The officer received a 30-day suspension with intent to dismiss and filed a grievance. *Id.*, ___ A.3d at ___, slip op. at 3. An arbitrator converted the officer's dismissal into a 50-day suspension, concluding the officer did not engage in sexual harassment. *Id.* This Court rejected the City of Philadelphia's appeal, in which it argued the arbitrator reformed the collective bargaining agreement. *Id.*, ___ A.3d at ___, slip op. at 4. We cited the legal principles summarized above, holding the arbitrator, at most, "erred as a matter of

8

law, and '[a] mere error of law is insufficient to support a court's decision to reverse an Act 111 arbitrator's award.'" *Id.*, ___ A.3d at ___, slip op. at 5-6 (quoting *Borough of State Coll. v. Borough of State Coll. Police Ass'n*, 303 A.3d 248, 255 (Pa. Cmwlth. 2023)).

Likewise, the City in this case fails to identify any "indisputably overt instance of reformation" that would allow this Court to disturb the Panel's decision. *See City of Pittsburgh*, 224 A.3d at 714. Our review reveals the Panel did not ignore or refuse to apply the 120-Day Rule or its unusual circumstances exception. Instead, the Panel found the City became aware of the rule violations and allegation against Fetty when OMI received the anonymous complaint on June 28, 2021. The Panel concluded the City needed to bring any disciplinary action within 120 days of that date and rejected the City's argument that Coworker's March 23, 2022 final protective order was based on new information. Thus, the City's disagreement is not with the Panel's act of adding to, or subtracting from, the terms of the Agreement, but with its findings of fact and interpretation of the Agreement based on those findings. For this reason, our narrow certiorari review prevents us from granting the City relief.[5] *See City of Phila.*, 181 A.3d at 489; *City of Pittsburgh*, 304 A.3d at 823 n.4.

The City argues in its second issue that the Panel's decision was contrary to public policy. City's Br. at 27-33. In *Smith*, our Supreme Court considered the cases of two state troopers who were dismissed for misconduct but later reinstated by an arbitrator. One of the troopers "jamm[ed] his loaded, police-issued weapon into [his ex-girlfriend's] mouth and threaten[ed] to kill her," and the other attempted to leave

---

[5] We note the record indicates no second OMI investigation occurred. When asked, Bruni agreed she "never conducted an investigation" into the allegations in Coworker's December 31, 2021 e-mail. R.R. at 33a. Bruni testified the City requested a second investigation, and she attempted unsuccessfully to schedule a meeting with Coworker "so I could sit down with her to try to clarify what she wanted OMI to specifically investigate." *Id.* at 32a-33a.

a department store "with $27.58 worth of merchandise for which he had not paid." *Smith*, 741 A.2d at 1250. The Pennsylvania State Police challenged the reinstatements, contending an arbitrator exceeds his or her powers "not only by ordering an illegal act or an act which does not relate to the terms and conditions of employment, but also by issuing an order which contravenes 'public policy.'" *Id.* at 1252. The Court found no merit to this argument, explaining as follows:

> Broadening the narrow certiorari scope of review to include a provision which would allow the courts to interfere with an arbitrator's award whenever that award could be deemed to be violative of "public policy"—however that nebulous concept may be defined by a particular appellate court—would greatly expand the scope of review in these matters. If we were to adopt the State Police's recommendation to include this ill-defined term within the narrow certiorari scope of review, we would markedly increase the judiciary's role in Act 111 arbitration awards. This would undercut the legislature's intent of preventing protracted litigation in this arena.

> We emphasize that these matters are not, as the State Police implies, about whether this court finds the reinstatement of these troopers to be repugnant. Rather, they concern the application of existing legislation. If we were to broaden the narrow certiorari scope of review to the extent propounded by the State Police, we would not be interpreting Act 111 but rather would be rewriting it. Clearly, such a legislative function is denied to the judiciary.

*Id.* at 1252-53 (citation and footnotes omitted).

The City acknowledges our Supreme Court's holding in *Smith* but argues it is "not on sound ground" and should be revisited. City's Br. at 28-33. Quoting Justice Newman's dissent in *Smith*, the City argues "the public policy of binding arbitration must cede to the public policy of insuring that the employees who are bound to carry out [law enforcement and safety] duties are of the highest integrity and character." *Id.* at 27-28 (quoting *Smith*, 741 A.2d at 1255 (Newman, J., dissenting)). The City cites cases under the Public Employe Relations Act, Act of July 23, 1970, P.L. 563,

10

*as amended*, 43 P.S. §§ 1101.101-1101.2301, finding public policy violations based on sexual harassment, and argues there is no reason to distinguish arbitration under that statute and Act 111. City's Br. at 31-33. In addition, the City emphasizes it had the duty to protect Coworker and could not simply ignore Fetty's conduct. *Id.* at 27-31.

Supreme Court decisions are binding on this Court, and we have no authority to disregard or overrule *Smith*. *See Zauflik v. Pennsburg Sch. Dist.*, 72 A.3d 773, 783 (Pa. Cmwlth. 2013) (quoting *Commonwealth v. Tilghman*, 673 A.2d 898, 903 (Pa. 1996)). We must, therefore, reject the City's public policy argument. The City retains the ability to petition our Supreme Court for review, present its public policy concerns, and ask the Court to reconsider *Smith*.

### III. Conclusion

The City's appeal challenges the Panel's findings of fact and interpretation of the Agreement, but this Court's narrow certiorari review prevents it from disturbing the Panel's decision for those reasons. Further, although the City's appeal questions our Supreme Court's *Smith* decision, that holding is binding on this Court. We affirm Common Pleas' April 20, 2023 order.

_____
STACY WALLACE, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh, Pennsylvania,  :
                       Appellant  :
                                   :
         v.                :  No.  535 C.D. 2023
                                   :
Fraternal Order of Police, Fort Pitt  :
Lodge No. 1 (Aaron Fetty)  :

# **O R D E R**

    **AND NOW**, this 6th day of March 2024, the order of the Court of Common Pleas of Allegheny County, dated April 20, 2023, is **AFFIRMED**.

_____
STACY WALLACE, Judge